## J. L. ELLINGTON v. STATE.

No. A-1194.   Opinion Filed April 27, 1912.

(123 Pac. 186.)

1.   **JUDGES—Special Judges—Authority.** Where a special judge is elected or agreed upon to sit in a particular case, which is not finally determined at the term at which he is elected or agreed upon, and he presides at a subsequent term or terms at which his authority is recognized by the parties, they thereby waive any objection that he was not re-elected or reagreed upon at such subsequent term or terms.

2.   **EMBEZZLEMENT — Elements of Offense — Fiduciary Relation.** Where a guardian is charged with embezzlement of the trust funds of his ward, he cannot be heard to say that such funds were unlawfully acquired by him as such guardian.  If he was agent enough to collect the money, he was agent enough to be punished for its embezzlement.  As against the guardian, the ward is the rightful owner of such property, it matters not what the rights of others may be.

3.   **SAME—Sufficiency of Evidence.** For facts which sustain the conviction of a guardian for embezzlement of money that came into his possession as the property of his ward, see opinion.

4.   **SAME—Enormity of Crime of Embezzlement.** For a discussion of the enormity of the crime of embezzlement, see opinion.

(Syllabus by the Court.)

*Appeal from District Court, Bryan County;*
*C. H. Elting, Special Judge.*

J. L. Ellington was convicted of embezzling $1,160, which came into his possession as the property of Clara May Burney, a minor and ward of defendant, and appeals.  Affirmed.

*W. D. Gibbs* and *J. Q. A. Harrod,* for appellant.

*Smith C. Matson,* Asst. Atty. Gen., for the State.

FURMAN, P. J.  The brief of counsel for appellant states the record and the facts in this case as follows:

"This cause was begun in the district court of Bryan county, Okla., by the grand jury returning into open court an indictment against the plaintiff in error on the 4th day of May, 1910, charg-

ing him with the crime of embezzlement, claiming that this plaintiff in error, while guardian of Clara May Burney, a minor, had embezzled the sum of $1,160 of the said minor's money. The plaintiff in error pleaded not guilty to said crime or indictment. He was tried and convicted on January 15, 1911. On the 30th day of May, 1910, the plaintiff in error filed a motion to disqualify the presiding judge. (See case-made, page 7.) On May 30, 1910, C. H. Elting was agreed upon as special judge to try the said cause. The cause was tried at the December, 1910. term of the said court. Judge Elting was agreed upon at the May term of the said court, and the cause was continued until the December term, at which time he tried the case without any agreement.

### ASSIGNMENT OF ERRORS.

"The plaintiff in error only desires to argue two points in this case, to wit: .

"First. This record fails to disclose at any point that C. H. Elting had any authority to preside as special judge in the said cause; that he ever at any time acquired jurisdiction as special judge. If such jurisdiction was acquired, it ceased when the cause was continued from the May, 1910, until the December, 1910, term of the said court. Therefore any and all orders made by the said C. H. Elting in the said cause was then and is now an absolute nullity.

"Second. That all of the money which this plaintiff in error is charged of embezzling came to him as curator of Clara May Burney by the sale of her supposed interest in two allotments of land, which originally belonged to Deloa Estelle Burney, deceased, and Le Roy Burney. deceased. The said deceased children were the brothers and sisters of this minor. They died prior to statehood, and left a father and mother. They were not married, and left no children of their own. Therefore, as a matter of law, we contend that she had no interest in the land, and therefore could not have any interest in the money."

The record in this case further shows that at the December, 1910, term of the district court of Bryan county, when this cause was reached for trial, the regular presiding judge of the court vacated his bench, and that "Hon. C. H. Elting, special judge in the case of State of Oklahoma v. J. L. Ellington, took the bench." The record then proceeds as follows:

"The state appears by J. T. McIntosh, county attorney in and for Bryan county, Oklahoma, C. B. Cochran, assistant county attorney, its attorneys, and the defendant. J. L. Ellington, appears in person and with him his attorney, J. Q. A. Harrod. Both the state and the said defendant announce ready for trial, and a jury of twelve good and lawful men of the body of Bryan county, Oklahoma, is duly impaneled and sworn to try the said cause; said jury being composed of the following named persons. * * *"

The record does not bring this case within the rule announced in the case of *Dodd v. State,* 5 Okla. Cr. 513, 115 Pac. 632. In that case, the defendant challenged the right of the special judge to preside when the order was made, changing the venue of the case from Beaver county to Texas county; and there was nothing in the record which could be construed as an agreement on the part of the defendant that said special judge should preside or make any order in the case after the expiration of the term at which he was agreed upon. In the case at bar, the record shows that the special judge presided at this trial, not only without objection on the part of appellant, but with his knowledge and consent, because it affirmatively appears in the record that both the defendant and his attorneys were in court, and without protest or objection announced ready for trial before said special judge. This could not be construed other than an agreement upon the part of appellant that said special judge should preside at the trial. In the Dodd case, every question was contested, objections were made, and proper exceptions were reserved during every stage of the trial. In the case at bar, the appellant, with full knowledge of the facts in the case, not only announced ready for trial, but did not attempt to raise the question now presented until the case reached this court. The Constitution and statutes do not prescribe any method by which an agreement for a special judge shall be made. The record conclusively shows that, by his conduct, appellant did agree that Hon. C. H. Elting should act as special judge in the trial of his case. This court has repeatedly held that there are certain jurisdictional matters that may be and are waived by the defendant failing to object at the proper time. See *Muldrow v. State,* 4 Okla. Cr. 325, 111 Pac. 656; *In*

*re Talley,* 4 Okla. Cr. ·398, 112 Pac. 36, 31 L. R. A. (N. S.) 805. It is too late to attempt to raise this question on appeal, when no objection or exception was taken to the special judge's jurisdiction at the first opportunity. The record in this case discloses that the special judge took the proper oath of office long prior to the trial, and that thereafter no objection whatever was made to his jurisdiction.

In *Schlungger v. State,* 113 Ind. 295, 15 N. E. 269, the Supreme Court of Indiana, speaking on the question of waiver of authority, said:

"Where the record does not disclose. any want of authority on the part of the trial judge *pro tempore,* who assumes to act under color of authority, and a party goes to trial before him without objection, he cannot, after conviction, question such authority."

See, also, *Kentucky Cent. R. Co. v. Kenney,* 82 Ky. 154.

In *Davis v. Bingham* (Tex.) 46 S. W. 840, it was held that "a party who tries a case before a judge without objection is estopped to assert that he was not agreed on by the parties for the trial." See, also, *State v. Sachs,* 3 Wash. 691, 29 Pac. 446; *Mattingly v. Paul,* 88 Ind. 95; *State v. Murdock,* 86 Ind. 124.

In *Small v. Reeves* (Ky.) 37 S. W. 682, it was held:

"Where a special judge is elected to sit in a particular cause, which is not finally determined at the term at which he is elected, and he presides at subsequent terms, at which his authority is recognized by the parties, they thereby waive any objection that he was not re-elected at the subsequent term or terms."

Second. The charging part of the indictment in this. case is as follows:

"That in said county of Bryan, in said state of Oklahoma, on the 16th day of September in the year of our Lord one thousand nine hundred and nine, one J. L. Ellington, late of Bryan county, state of Oklahoma, who was then and there the legal guardian of one Clara May Burney, a trust relation of guardian and ward then and there existed, and who as such guardian of said Clara May Burney was then and there intrusted with and had in his possession and control the sum of eleven hundred and sixty dollars in good and lawful money of the United States of America and of the value of eleven hundred and sixty dollars,

which said sum of money was then and there the property of and belonged to the said Clara May Burney, and which said sum of money came into and was then and there in the possession and control of the said J. L. Ellington under and by virtue of his said trust as such guardian of the said Clara May Burney, did then and there willfully, unlawfully, feloniously, fraudulently, and not in the due and lawful execution of his said trust, embezzle, convert, and appropriate the said sum of money to the use of him, the said J. L. Ellington."

That appellant was the duly appointed guardian of Clara May Burney, as charged in the information, and that as such guardian of his said ward he did receive and was intrusted with and had in his possession and control the sum of $1,160 in money as the property of and as belonging to his said ward, and that appellant did willfully, unlawfully, feloniously, and fraudulently, and not in the due and lawful execution of his said trust, embezzle, convert, and appropriate to his own use said sum of money, is fully proven by the evidence, and is not denied by the appellant. But the novel defense is made that said money was received by appellant as the proceeds of a sale of her supposed interest in two allotments of land, and that, as a matter of fact, the said ward of appellant did not have any interest in such land, but that it was the property of her father and mother. To admit the sufficiency of this defense would be to allow appellant to play hide and seek with the law and juggle with justice, and permit him to take advantage of his own wrong. The effect of this is the same as if appellant had said: "I received this money as the property of my ward, but, as a matter of fact, she had no right to it. Therefore it was no offense for me to steal it, because I only took that to which she had no right." It is immaterial as to who was the owner of the proceeds of the sale of these allotments, because section 6701, Comp. Laws 1909, provides:

"When an offense involves the commission of, or an attempt to commit, a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, is not material."

By the wording of this indictment, appellant had sufficient notice and must have had knowledge of the act of embezzlement for which he was to be tried thereunder. His contention presents the anomalous position of a person appearing in one court and taking out letters of guardianship and procuring possession of money and property under the contention that the same belongs to his ward, and then, after squandering such property, this person appears in another court, contending that he cannot be guilty of embezzling that property, because his said ward was not entitled to it.

The ownership was sufficiently alleged as against the embezzler, and we think properly alleged, because he obtained possession of it as property of Clara May Burney. If he was agent enough to collect this money, he was agent enough to be punished for its embezzlement. As against him, whatever the rights of others might be, his ward was the owner of this money. He will therefore not be permitted to say in his defense that it was not her property. Even in civil suits, a tenant cannot dispute the title of his landlord. It is no defense in embezzlement to contend that the property was unlawfully acquired by or for the principal.

In the case of *State v. O'Brien,* 94 Tenn. 79, 28 S. W. 311, 26 L. R. A. 252, the Supreme Court of Tennessee said the following:

"The indictment in this case rests on section 5475, Mill & V. Code Tenn. It is unnecessary for us to analyze this section. It is enough to say that its terms are broad enough to include the employees of a foreign corporation; and the facts alleged in the indictment, being proven, would warrant a conviction, unless it be that the plea in hand offers a sufficient defense. The question then presented here is, Is it a good plea? We have no hesitation in saying it is not. Conceding that this corporation (organized, as is avowed in the indictment, for benevolent purposes) is within the act of 1891 ([Laws 1891, c. 122] and this we do not now determine), yet, if it should turn out in proof that the defendant, while acting as agent and employee of it, received money paid to him for his principal in the course of his employment, and then feloniously and fraudulently appropriated it to his own use, when indicted for the offense, he cannot be per-

mitted to defend himself from the criminal consequences of such wrongdoing upon the ground that his principal was carrying on its business in this state in violation of the terms of that act. Upon the plainest principles, having assumed to receive this money for his nonresident principal, he is concluded, both civilly and criminally, by this assumption. Whatever others might say about the right of this foreign corporation to come into this state to carry on its business and acquire property interests, without having first complied with the requirements of the act of 1891, at any rate the defendant's mouth is closed, when, as agent, he received the money of and for this corporation, and feloniously appropriated it to his own use. The wrongful act of the principal cannot be invoked as a protection against the still more wrongful act of the guilty agent. To him, under such circumstances, the rule of estoppel applies. On this subject, the case of *State v. Spaulding*, 24 Kan. 1, is very instructive. In that case, Spaulding was city clerk, and the money which he was charged with embezzling came from license fees collected by him. Under the ordinances of the city, the license fee was payable to the city treasurer, who issued a receipt therefor, upon the production of which the sole duty of the city clerk was to make out and attest the license, which was then signed by the mayor. The duty of this clerk was purely clerical, and he had nothing to do with the money. The fact was, however, he collected from numerous licensees the money due, on the delivery of their licenses. Having fraudulently appropriated the money, and being indicted for embezzlement, he undertook to defend upon the ground that, as his receipt of these moneys was unauthorized and outside the line of his duty, they were not the moneys of the city, but of various licensees, and that therefore the indictment for embezzlement of the city's funds could not be maintained. To this contention, however, the state replied: 'A man may not say, "I have the right to receive money," and receive it, and then, when challenged for its receipt for embezzlement, avoid liability by saying, "I had no right to receive it." He has voluntarily assumed a position, the responsibilities of which he may not avoid. The defendant may not say he holds this money simply for the licensees, because he himself has issued the licenses, which he might rightfully issue only when the city had received the money; that by issuing he conclusively, so far as he was concerned, affirmed that the money he received and was holding was city money. The law of estoppel binds him, whether it binds any one else or not, and is equally potent in a criminal as well as a civil

action.' The court adopted this view, and said, through Judge Brown, delivering the opinion: 'We hold that when one assumes to act as agent for another he may not, when challenged for these acts, deny his agency; that he is estopped, not merely as against his assumed principal, but also as against the state; that one who is agent enough to receive money is agent enough to be punished for embezzling it.' Mr. Wharton, in his work on Criminal Law (9th Ed.) vol. 2, sec. 1328, recognizes this rule of estoppel in its spirit, if not in form. He says, upon the authority of cited cases: 'It is no defense that the principals have no right, as against third parties, to the money which the servant embezzles, or that their title was wrongful. If he fraudulently takes it on their account, and then embezzles it, the offense is complete. Nor is it any defense that the money embezzled was the proceeds of the sale of liquor kept in violation of law.' Bishop, in his work on Criminal Law (3d Ed.) sec. 367, distinctly suggests the rule of estoppel as one proper for adoption in criminal jurisprudence. He says: 'In reason, whenever a man claims to be a servant while getting into his possession, by force of his claim, the property to be embezzled, he should be held to be such on his trial for the embezzlement. Why should not the rule of estoppel, known throughout the entire civil department of our jurisprudence, apply in the criminal?' Without further discussion, we are content to adopt this rule of estoppel, so long recognized in the civil courts, as a proper one for the enforcement in the criminal courts of this state, believing as we do, that it rests on sound reason, and is supported by the weight of authority of eminent respectability."

We fully concur in the reasoning of the foregoing case, and regard it as being absolutely just; and we deem it unnecessary to cite further authorities on this question. It is true that cases can be found supporting the contention of counsel for appellant. It is a reproach to the courts that many of them seem to regard justice as being of secondary importance, and appear to seek for finespun theories and absurd technicalities upon which to turn guilty men loose. This court has no sympathy with and will not follow any such decisions. Such authorities only constitute so much ancient rubbish, learned nonsense, petrified ignorance, senile imbecility, and rank injustice, and as such they have no rightful place in the jurisprudence of an intelligent, honest, and progressive people. Counsel for a defendant waste their time and use

their talents to no purpose in citing and discussing authorities to this court, not based upon justice and supported by reason.

We find no error in the record in this case, and we believe that in the conviction of appellant justice has simply overtaken, claimed, and marked its own. We desire to repeat what we have heretofore suggested, and that is that in cases of this kind severe punishment should be inflicted. The embezzler of trust funds is at heart a greater criminal and a much worse man than the burglar or the highwayman. The one poses as a good citizen, and often "steals the livery of heaven to serve the devil in." The others come out in their true colors as thugs and criminals. The one is not only a thief, but he is also a traitor to friends, and violates confidence reposed in him. The others steal; but in so doing they do not betray confidence and trust. The one incurs no risk of personal injury; it takes no physical courage to betray and rob widows and orphans. The burglar and the highwayman are in constant danger of serious personal injury, if not of death. The one is generally a despicable coward; the others are generally physically brave men. They should both be punished; but of the three the embezzler should be more severely dealt with. We urge county attorneys to press these views upon juries, and to do all in their power to secure the highest possible punishments in these cases. The rich and the strong can largely protect themselves; but the weakness and helplessness of widows and children should appeal most strongly to the courts for protection. If the courts and juries will carry these views into execution, Oklahoma will soon become too hot to contain an embezzler. We may not be able to make such men love the law; but if an honest effort is made to bring them to justice they can be made to respect and fear it.

The judgment of the lower court is therefore, in all things, affirmed.

DOYLE, J., concurs. ARMSTRONG, J., being disqualified, did not participate in the consideration and decision of this case.