J. H. PRICE v. STATE.

No. A-1782.   Opinion Filed January 10, 1914.

(137 Pac. 736.)

1.   APPEAL—Briefs—Sufficiency. It is an abuse of the privilege of filing typewritten briefs for counsel to use paper which is so thin that what is written thereon can only be read with difficulty. Typewritten briefs should be upon paper of standard weight, and the work should be so executed as to be legible.

2.   EMBEZZLEMENT—Statutory Provisions—Attorneys. Section 271, Comp. Laws 1909, is not, and never was, a part of the Penal Code of Oklahoma, and is applicable only in disbarment proceedings against attorneys.

3.   TRIAL—Conduct of Counsel—Dilatory Matters. The constant presentation and discussion of questions of law which have no application to a case, the making of dilatory pleas, and objecting and excepting to everything done in the trial of a cause, without reference to the substantial merits of a case, is a practice which should not be encouraged or tolerated by the courts.

4.   EMBEZZLEMENT—Prosecution of Attorney—Defense. Where a lawyer from another state moves into Oklahoma, and, without securing admission to the bar of this state, holds himself out to

the public as a lawyer, and accepts business as such, and embezzles money collected by him as a lawyer, he cannot escape punishment upon the ground that he was never legally admitted to the bar of Oklahoma.

5.    **SAME—Sufficiency of Evidence.**    For testimony which conclu-sively establishes the guilt of defendant, see opinion.

*Appeal from District Court, Blaine County;*
*James R. Tolbert, Judge.*

J. H. Price was convicted of embezzlement, and appeals.   Affirmed.

The information in this case is as follows:
"In the Name and by the Authority of the State of Oklahoma.

"Now comes A. L. Emery, county attorney in and for the state and county aforesaid, and gives the court to know and be informed that one J. H. Price, late of the county of Blaine and state of Oklahoma, on the —— day of January, in the year of our Lord one thousand nine hundred and ten, at and within the said county and state, was then and there an attorney at law, engaged in the practice of the law, and as such attorney at law, in the course of his professional business, the Grennell Vehicle Co. intrusted, employed, and delivered to the said J. H. Price the possession of a certain promissory note and claim, which said promissory note and claim the said Grennell Vehicle Co. was then and there the owner, in favor of the said Grennell Vehicle Co. and against one J. F. Winter and one Kate Winter, who were the makers of the said promissory note for the sum of $123.60, and interest thereon at the rate of ten per cent. from date until paid, amounting in all to the sum of $130.55, for the purpose of collecting the said sum of $130.55 from the said J. F. Winter and from the said Kate Winter for the said Grennell Vehicle Co., and he, the said J. H. Price, as such attorney at law, and in furtherance of his employment in the course of his professional business as such attorney at law by the said Grennell Vehicle Co., did, on August 29, 1910, collect from the said J. F. Winter and from the said Kate Winter, as part payment on said promissory note, the sum of $125.00 for the said Grennell Vehicle Co., and he, the said J. H. Price, on the 25th day of November, in the year of our Lord 1910, did then and there unlawfully, willfully, intentionally, knowingly, wantonly, maliciously, feloniously, and fraudulently refused to pay over to the Grennell Vehicle Co. the said sum of $125.00 upon the demand made upon him, the said J. H. Price, by said Grennell

Vehicle Co., and he, the said J. H. Price, did then and there un-
lawfully, willfully, intentionally, knowingly, wantonly, malic-
iously, and feloniously, and fraudulently appropriate and embez-
zle the said sum of $125.00, the property of and owned by the
said Grennell Vehicle Co., and intrusted to him, the said J. H.
Price, by the said Grennell Vehicle Co., as aforesaid, to his, the
said J. H. Price's, own use and benefit, with the unlawful, will-
ful, felonious, and fraudulent intent then and there on the part
of him the said J. H. Price to deprive the said Grennell Vehicle
Co. thereof as aforesaid, and he, the said J. H. Price, did not
then and there, or at any time, claim any fees out of the said
sum of $125.00 contrary to the form of the statute in such case
made and provided and against the peace and dignity of the
state.

      "A. L. EMERY, County Attorney.

 "Witnesses indorsed: Frank W. Ferguson. August Do-
brinski. O. G. Graalman. R. J. Smith. J. F. Winter. Kate
Winter. E. J. Warner. A. La Rue."

Filed as follows:

"Filed Aug. 25, 1911. E. J. Warner, Clerk, by Wm. B.
Halbig, Deputy.

"Filed Sept. 5, 1911. E. J. Warner, Clerk."

Frank W. Ferguson testified for the state: That he was
the collector of the Grennell Vehicle Company, of Grennell,
Iowa, and that it was his business to look after past due notes
and renewals of the same. That on the 20th day of January,
1910, as such collector, he had in his possession for collection
two notes payable to said company, and signed by J. F. Winter
and Kate Winter. That on said date witness was introduced to
appellant in Okeene as a lawyer, and as a lawyer appellant agreed
to accept the notes, and have them renewed and secured by a
mortgage. In conformity with such employment, said J. F.
Winter did execute a note in the sum of $114, secured by a
mortgage on land in Kansas. That witness paid appellant $10
for his legal services in the matter. Witness received a note
of $114.30, given by Winter, as renewal on the other notes. That
afterwards some trouble arose about the land in Kansas, as the
records there showed that it was not the property of Winter,
and on the 17th day of March, 1910, witness returned the note

to Price to have the matter fixed up. That a new note was executed in the sum of $123.63, a part of which was for the payment of the services of appellant which was advanced and paid by witness. That this new note was delivered to the witness, and that subsequent to that time, in August, 1910, it was returned to Price for collection. That on the 15th day of August, 1910, witness and appellant went out with a team to see Mr. Winter about collecting the note, and saw Winter at his threshing machine. Winter offered to give an order on Mr. Dobrinski for $140.55 for the amount of the note, and interest, and a fee of $10 to pay Price for going out there, provided that Dobrinski would accept the order for threshing which was yet to be done by Winter. That appellant and Winter went to see Dobrinski, and came back with an order for $125 on Dobrinski, signed by J. F. Winter, which was accepted by Dobrinski. Winter paid Price $2 out of his own pocket, and it was agreed that Price and Winter should adjust the attorney's fee between themselves. Witness then accepted and took possession of the order, and witness and appellant returned to town. After they returned to town, witness delivered the order to Price for collection, and in November, 1910, witness learned for the first time that Price had collected this order; but Price claimed to witness that the money was tied up. That on November 14, 1910, witness went to see Price about this matter, and Price told witness that the money was tied up, and did not say anything about having collected it, but told witness that, if he would wait until the next morning at 9 o'clock, he (Price) would pay him the money.

The following letter written by appellant was offered in evidence:

"Okeene, Oklahoma, Sept. 23, 1910. F. W. Ferguson, Clinton, Okla.—Dear Sir: I got your letter yesterday. I kept after those fellows out there till I got Dobrinski's check for $125.00, and Jake promises to pay the rest in a few days. I want you to let this stand as it is for a few days, so I can use it as a leverage on Jake to make him come through. He is afraid of you, and I don't want to stand loser, if I can help it. Let me hear from you. Yours truly, J. H. Price."

August Dobrinski testified for the state: That he was a farmer, and was acquainted with J. F. Winter and appellant. That during threshing time in 1910 witness had an agreement with Winter to do his threshing for him. That Winter and appellant came to see witness, and at their request witness accepted an order for $125. Something was stated at the time about Ferguson. Mr. Winter said to Price, "Suppose Ferguson gets after me?" Price replied, "Do not mind Ferguson; I will keep him off your back." As soon as the threshing was over, witness deposited the money in the bank, and told Price the same day to present his order, and get the money. This was on the 25th day of August, 1910.

O. G. Graalman testified that he was cashier of the Citizens'. State Bank at Okeene in 1910; that he was acquainted with appellant, J. F. Winter, and A. Dobrinski. He identified the check of A. Dobrinski given to appellant on the 25th day of August, 1910, in the sum of $125, which was indorsed by appellant, and the said money was placed to the credit of his personal checking account.

E. J. Warner testified that he was clerk of the court of Blaine county, and said witness introduced in court, as exhibits, pleadings filed in the district court of Blaine county, signed by appellant as attorney.

A. La Rue testified that he was justice of the peace of Blaine county; that he was acquainted with appellant; that beginning in November, 1909, appellant filed a number of suits before witness as an attorney.

The state offered in evidence the record of said justice of the peace, and from it it appears that appellant had filed a number of suits in the justice court of Blaine county as an attorney. The state then rested.

Appellant testified in his own behalf: That he resided in Okeene, Okla. That his business was collecting and practicing law where they would let him; but that he had never been admitted to practice law in Oklahoma. In January, 1910, witness Ferguson spoke to appellant about bringing suit on certain

notes against J. F. Winter, and witness told him that he would charge him $15 to do so. That Ferguson replied that, if appellant was a good lawyer, he would pay it. The witness then testified at length as to the circumstances under which the mortgage was obtained from Winter, and that the mortgage and new note were delivered to Ferguson; that subsequently the mortgage and note were returned to witness, and that witness and Ferguson went out to see Winter about the matter, and that, after they reached Winter's, witness had a private conversation with Winter, and went with Winter to see Dobrinski, and secured from said Dobrinski the order offered in evidence; and that said order was to be applied to the payment of claims which were held by witness on behalf of other parties. Appellant denied ever having turned the order over to Ferguson; that, after Ferguson and appellant returned to Okeene, Ferguson delivered the mortgage and note, which he held, to witness for collection. Witness denied positively that he had ever collected any money for the Grennell Vehicle Company.

Appellant offered in evidence the deposition of J. F. Winter taken at Harrington, Kan. He testified that during the months of July and August, 1910, he gave appellant an order on A. Dobrinski for the sum of $125. The said order was for his indebtedness to Smidt & Co., and Ed Hockeday & Co., and said order was not for the benefit of the Grennell Vehicle Company. Witness was asked the question as to whether or not he was acquainted with Mr. Randolph, an attorney of Okeene, and witness denied having stated to said attorney that the $125 order from Dobrinski was to be paid to the Grennell Vehicle Company.

Defendant rested.

Mrs. Charles Wilson testified for the state in rebuttal that she heard appellant say to her husband that he (appellant) had been arrested, and had been unable to sleep for two weeks; that he was going to Harrington, Kan., where he could buy any kind of evidence that he wanted. He said that he would take the deposition of the witness there. At this time Price was

attorney for her husband, and had been paid $50 to defend him on the charge of rape.

E. S. Randolph testified that he was an attorney residing at Okeene; that he was acquainted with J. F. Winter; that J. F. Winter had told witness that he had been given an order by August Dobrinski to pay the note due the Grennell Vehicle Company.

The state proved by a number of witnesses that the general reputation of J. F. Winter for truth and veracity was bad in the community in which he resided.

Appellant was convicted of embezzlement, and appeals. Af-firmed.

*William O. Woolman,* for appellant.

*Smith C. Matson,* Asst. Atty Gen., for the State.

FURMAN, J. (after stating the facts as above). First. This court permits typewritten briefs to be filed; but, when this is done, they should be executed in such a manner as to be legible. It is a violation of the rules of this court to file briefs typewritten upon paper which is so thin as to make what is written thereon scarcely legible. In such briefs paper of standard weight should be used, and the work should be so exe-cuted as to be legible. In this cause a typewritten brief of 58 pages was filed, which could only be read with great difficulty, and the court was compelled to waste much valuable time and labor in trying to find out what counsel for appellant was driv-ing at. We have frequently had occasion to condemn the prac-tice of filing such briefs, and trust that we will not find it neces-sary to do so in the future. If this admonition is not heeded, we will be compelled to strike such briefs from the record.

Second. As we gather from the brief of counsel for appel-lant, the contention is that the information in this cause should have been based upon section 271, Comp. Laws 1909, which is as follows:

"An attorney who receives money or property of his client's and in the course of his professional employment or business, and fails for a period of thirty days after receiving the same to

notify his client, and on demand to pay over to his client all of said money or property in excess of his agreed fee, if there be an agreed fee, and if not then in excess of a reasonable fee, shall be guilty of embezzlement and shall be disbarred, and may be disbarred without being prosecuted for embezzlement. An attorney who, at or before the time of the passage of this act, shall have. collected money for a client and does not report and pay over the same to his client within thirty days after the passage of this act, shall be disbarred. If the property in any event is held for more than thirty days on the written order of the client, or if delivery is prevented by any cause (other than by the use of the property by the attorney) wholly beyond the control of the attorney, then he shall not be guilty of embezzlement nor be disbarred, but the burden shall be on the attorney to prove the cause of the delay."

The trial of the case was conducted, and appellant was convicted, under section 2673, Rev. Laws 1910, which is as follows:

"If any person being a trustee, banker, merchant, broker, attorney, agent, assignee in trust, executor, administrator or collector, or being otherwise entrusted with or having in his control property for the use of any other person, or for any public or benevolent purpose, fraudulently appropriates it to any use or purpose not in the due and lawful execution of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, he is guilty of embezzlement."

The information could not have been founded upon section 271, as contended for by counsel for appellant, because said section is not, and never was, a part of the Penal Code of Oklahoma, and therefore could not be the basis of a criminal prosecution. It was a part of the civil law of Oklahoma regulating the conduct of attorneys, and applied to disbarment proceedings. This disposes of a great deal that is said by counsel for appellant which it is unnecessary to discuss here. The information in this case was properly based upon section 2673, Rev. Laws 1910, and the proceedings were properly conducted according to this section.

Third. When the first witness for the state was placed upon the stand, counsel for appellant interposed the following objections to the introduction of any testimony in the cause:

"Mr. Woolman: Defendant objects to the introduction of any evidence on behalf of the state in this case, for the reason that the information does not state facts sufficient to constitute a crime under the laws of the state of Oklahoma. The Court: Overruled. Mr. Woolman excepts. Mr. Woolman: For the further reason that there was no preliminary examination had in this case prior to the commencement of the action in the district court, as is shown by the record and proceedings had on the motion heretofore had in this cause. The Court: Overruled. Mr. Woolman excepts. Mr. Woolman: For the further reason that this cause was not brought on trial within—at the second term succeeding the time of the filing of the original information in this court, as shown by the proceedings had herein prior to the commencement of the trial. The Court: Overruled."

The information follows the language of the statute, and is sufficient as against the objection made. The objection that there had been no preliminary examination prior to the filing of the information in the district court cannot be presented in this manner, and is otherwise insufficient, because the record affirmatively shows that such a preliminary examination did take place. The objection that the case was not tried within the second term of the court after the information was filed, in the absence of a showing that appellant was ready for trial, and demanded a hearing, and objected to the continuance of the cause, cannot be considered. See *Head v. State,* 9 Okla. Cr. 356, 131 Pac. 937; *Parker v. State,* 7 Okla. Cr. 238, 122 Pac. 1116, 124 Pac. 80; *Bowes v. State,* 7 Okla. Cr. 316, 126 Pac. 580.

The record in this case contains nearly 400 pages, and from beginning to end is full of such objections and exceptions as above stated. The constant presentation and discussion of questions of law which have no application to the case, making dilatory pleas, and objecting and excepting to everything done in the trial of the cause, without reference to the substantial merits of the case, cannot do otherwise than weaken the defense. It makes the impression upon the minds both of the jury and of the court that the defendant is guilty, and is relying solely upon the technical skill of his counsel to secure an acquittal. It also unnecessarily consumes a great deal of time which should be devoted to the consideration of the actual merits of the cause.

or in the trial of other cases. It delays the administration of justice, incumbers the record, and adds greatly to the cost of criminal trials, and thereby entails an unjust burden on the state, and no good purpose whatever can be subserved by pursuing such a course, and it should not be encouraged by the courts.

Fourth. At great length counsel for appellant argues that this conviction cannot be sustained, because the record shows that appellant was never legally admitted to the practice of law in the state of Oklahoma. The record does show, however, that appellant was legally admitted to practice law in the state of Illinois, and as a matter of fact he held himself out to the public as a lawyer, and did practice law in Blaine county, Okla.; that he appeared as an attorney in a number of cases; and that he accepted employment and received pay in this case as an attorney. It is true that such conduct was illegal; but the commission of one crime can never be pleaded as an atonement for the commission of another crime. In ancient days under the common law the members of the clergy were not subjected to capital punishment; the presumption being that, on account of their supposed exceeding goodness, there must be some mistake, and they would not have willfully violated the law. Counsel for appellant seeks to reverse this rule, and claims that, on account of his exceeding badness, appellant should not be punished. The very question here presented is identical in principle with the question presented in the case of *Ellington v. State,* 7 Okla. Cr. 252, 123 Pac. 186. It was there held:

"Where a guardian is charged with embezzlement of the trust funds of his ward, he cannot be heard to say that such funds were unlawfully acquired by him as such guardian. If he was agent enough to collect the money, he was agent enough to be punished for its embezzlement."

In this case, if Price was attorney enough to accept employment to collect this money, he is attorney enough to be punished for embezzling it.

Bishop, in his work on Criminal Law (3d Ed.) sec. 367, says:

"In reason, whenever a man claims to be a servant while getting into his possession, by force of his claim, the property to be embezzled, he should be held to be such on his trial for the embezzlement. Why should not the rule of estoppel known throughout the entire civil department of our jurisprudence apply in the criminal?"

The lawyers of Oklahoma can rely with confidence upon the support and protection of this court whenever their conduct is professional; but we are not going to stretch the law to screen and protect any lawyer who has been guilty of dishonorable practices. Leniency on the part of the courts and of the members of the bar towards such conduct has done more than any one cause to discredit the profession in the eyes of honest people. The time has come when the members of the bar and courts should act in such matters without fear, favor, or affection, and with a strong hand purge the profession of all unworthy characters. Practicing law is a necessary and honorable profession, and it should be confined to honest men. Lawyers should be held to the strictest accountability. Their opportunity for wrongdoing is great, and the public and profession should be protected from the illegal acts of dishonest lawyers.

Fifth. The testimony of the state's witness Ferguson that the Dobrinski order was placed by him in the hands of appellant for collection, to be applied to the debt due the Grennell Vehicle Company, is fully corroborated and sustained by a letter written by appellant on September 23, 1910. This letter is an admission of all the state contends for on this point. Out of the appellant's own mouth he stands condemned. It is true that in Winter's deposition said witness denied that the Dobrinski order was given for this purpose; but the testimony of E. S. Randolph, who, so far as this record goes, appears to be entirely credible, shows that Winter had told said witness that the Dobrinski order was for the purpose of paying the note due the Grennell Vehicle Company. It was also proved by a number of witnesses that the general reputation of Winter for truth and veracity in the community in which he resided was bad. It was also shown that appellant, before taking the testimony of the

said Winter, had stated that he was going to purchase his testimony, and that he could buy any kind of evidence he wanted. There is not one line of credible evidence in this record which would indicate good faith on the part of appellant. All of the testimony points to his guilt as conclusively as the spokes of a wheel point to the hub as a common center.

Counsel for appellant has presented fourteen specifications of error. We have considered each and every one of them in connection with the record, and find that they are each and all without substantial merit. Not one of them presents even a debatable question. The plain and simple truth is that, according to this record, appellant is guilty, and it would be a miscarriage of justice to set aside this verdict and judgment on the grounds relied upon.

Judgment of the lower court is therefore in all things affirmed.

ARMSTRONG, P. J., and DOYLE, J., concur.