## JOSEPH E. YEATS v. STATE.

No. A-5436.　Opinion Filed May 14, 1925.
(236 Pac. 62.)

(Syllabus.)

1. Abduction—Divorced Person Within 6 Months from Divorce Abducting Female Under Age of 15 for Purpose of Marriage. A divorced person in this state, within the 6-month period during which he is prohibited from contracting a second marriage, may be guilty of the abduction of a female child under the age of 15 years "for the purpose of marriage," where it is shown the purpose of the abductor was to marry the girl in Texas and to establish a permanent residence there.

2. Same—Inhibition of Marriage in Decree of Divorce Within 6 Months not Rendering Invalid Marriage in Another Jurisdiction Where Otherwise Valid. Within the meaning of our statute,

section 1842, Comp. Stat. 1921, defining abduction "for the purpose of marriage or concubinage," the inhibition against marriage contained in every decree of divorce until the expiration of 6 months is not one which continues the marital status so as to render invalid a marriage contracted in another jurisdiction where it would otherwise be valid.

3. **Divorce—Marriage of Divorced Person Within 6 Months Invalid if Solemnized in State, or in Another State to Evade Law.** A marriage of a divorced person within the prohibited period is invalid in this state if solemnized here, or if solemnized in a sister state to evade the law of this state.

4. **Abduction—Attempted Common-Law Marriage of Divorced Man to Girl Under Age of 15 Within 6 Months After Divorce Void.** An attempted common-law marriage of a divorced man to a girl under the age of 15 years, entered into during the prohibited period after the divorce decree is rendered in this state, is void, and constitutes no defense to a prosecution for the abduction of the female child.

Appeal from District Court, Nowata County; C. H. Baskin, Judge.

Joseph E. Yeats was convicted of abduction, and he appeals. Affirmed.

C. F. Gowdy, for plaintiff in error.

Geo. F. Short, Atty. Gen., and Chas. Hill Johns, Asst. Atty. Gen., for the State.

BESSEY, P. J. Joseph E. Yeats, plaintiff in error, herein referred to as the defendant, was charged with the abduction of Georgia Fields, the minor daughter of Mr. and Mrs. A. W. Fields. At the trial he was found guilty and sentenced to serve a term of 5 years in the state penitentiary.

The evidence shows that at and before the time of the offense as charged the defendant was the minister in charge of a church at Alluwe, in Nowata county. The parents of the girl connected with this unhappy affair were active members of his church. The defendant was a man 36 years of age, the father of three children, and had been

divorced from his wife about 5 weeks prior to this abduction. Georgia Fields had not quite reached the age of 15 years. By reason of their church affiliation and frequent association together this girl and the defendant developed an affection for one another, culminating in defendant's flight with the girl in an automobile over a circuitous route to Winter, Tex.

This record discloses that the defendant was an illiterate person, with emotional religious tendencies, but incapable of discerning, or at any rate of practicing, the higher principles of morality. Without relating all of the details leading up to and surrounding the deception practiced upon the victim's parents and others, and the subsequent flight of the defendant with the girl to Texas, it appears that in the course of the protracted evangelistic religious services then being held by the defendant, during which time he gave this girl music lessons and they planned various entertainments, she fell in love with him. They were much in each other's society, and finally they agreed to marry, and planned to secretly escape to Texas for that purpose. To create an excuse for stealing this child from her parents—an excuse that would seem plausible to the minds of the members of his church—the defendant induced the girl to tell two or three of her girl friends that she was born out of lawful wedlock; that her reputed father, Mr. Fields, was not her real father, and that her home life was restricted and unhappy; that she expected to go to stay with defendant's parents in Texas, where she might enter school to finish her education. Pursuant to these plans they did go to Texas, where they were soon apprehended and arrested. The girl's father and mother followed and brought their repentant daughter home. After consulting the county attorney, this prosecution was instituted.

The statute upon which this prosecution is based, section 1842, Comp. Stat. 1921, reads as follows:

"Any person who takes away any female under the age of fifteen years, from her father, mother, guardian or other person having legal charge of her person, without their consent, for the purpose of marriage or concubinage, is punishable by imprisonment in the penitentiary not exceeding five years, or by imprisonment in the county jail not exceeding one year, or by a fine not exceeding one thousand dollars, or by both such fine and imprisonment."

The information alleged that the defendant took this girl, under the age of 15 years, without the consent of her parents, "for the purpose of marriage."

The numerous assignments of error urged by defendant may be condensed into two propositions:  (1) That the court erred in refusing to instruct the jury that under the evidence this defendant could not have abducted this girl for the purpose of marriage because he could not at that time have entered into a legal marriage, on account of the provision contained in the decree of divorce, prohibiting him from entering into a second marriage until 6 months after its rendition, and the provisions of our divorce statute to the same effect; (2) that the defendant could not be prosecuted for an abduction for the purpose of marriage because the testimony showed that the defendant and this girl had entered into a common-law marriage a few days before the alleged abduction.

In other words, defendant first contends that he could not enter into a legal marriage, and therefore could not be guilty of abduction "for the purpose of marriage," within the meaning of the statute; and next contends that he did enter into a legal common-law marriage with this girl at Alluwe, before the abduction, and that therefore the abduction was not "for the purpose of marriage." These inconsistent defenses will be considered in their order.

Our statute prohibiting remarriage within 6 months after rendition of the decree of divorce, section 510, Comp. Stat. 1921, in part provides:

"It shall be unlawful in any event for either party to such divorce suit to marry any other person within six months from the date of the decree of divorcement. * * * Any person marrying contrary to the provisions of this section shall be deemed guilty of bigamy, and such marriage shall be absolutely void."

Our divorce statute was borrowed from the state of Kansas. Before our adoption of the state the Supreme Court of Kansas held that the divorce when granted dissolved the marriage relation, and that within that state until the expiration of the 6-month period the penal provisions of the divorce statute applied only to the prohibition. In a few cases the courts say, or by loose language intimate, that the marriage relation between the parties does not actually terminate until the end of that period. This discrepancy also appears in some of the Oklahoma decisions. Wilhite v. Wilhite, 41 Kan. 154, 21 P. 174; Niece v. Ter., 9 Okla. 535, 60 P. 300; Baughman v. Baughman, 32 Kan. 538, 4 P. 1003; Wilson v. State, 16 Okla. Cr. 471, 184 P. 603; Atkeson v. Sov. Camp, W. O. W., 90 Okla. 154, 216 P. 467.

The divorce statute defining bigamy differs from the general statute on bigamy, and provides for a lighter penalty. A second marriage within the 6-month period is an anomalous kind of statutory bigamy, analogous to statutory rape without force.

The Legislature has the right to regulate the contract of marriage and the formalities of its dissolution within the state, but the courts are not in harmony as to just what extraterritorial force and effect will be given to certain collateral domestic policies beyond the limits of the state.

It must, of course, be conceded that the defendant could not consummate a legal second marriage in this state within the 6-month period, but many of our sister states have held that one might do so in another state where the marriage and divorce laws of the latter contain no such prohibition. They so hold upon the theory that in effect within

this state the marital relation is dissolved the moment the decree of divorce is rendered, and that the prohibition against remarriage is in the nature of a penalty which a sister state having a different policy will not enforce, so that within such a sister state a second marriage may be consummated within the 6-month period, valid in that state. If that be true, and if Texas is one of the states so holding, this defendant might within the 6-month period abduct from Oklahoma into Texas a female child under the age of 15 years, for the purpose of a legal marriage in Texas.

In Atkeson v. Sovereign Camp, W. O. W., supra, the court held that a marriage contract entered into in another state within 6 months from the rendition of the decree of divorce in Oklahoma is void in Oklahoma, "or in any other place." The phrase "in any other place" is dictum, because in that case the validity of the divorce in any other place was not involved. Furthermore, the courts of this state are powerless to decree a marriage void out of the state, so the phrase "in any other place" is meaningless.

In the case of Wingo v. Rudder (Tex. Civ. App.) 120 S. W. 1073, it was stated that such provision in a judgment of divorce rendered in another state is to be regarded as a penalty, and that it is clear, beyond controversy, that a provision imposing such penalty could not be made effective as a bar against Nancy's entering again into the marital state within the state of Texas; Texas having no such prohibition.

In a recent opinion by the Supreme Court of this state (Mudd v. Perry, 108 Okla. 168, 235 P. 479) the court criticizes the holding in the Atkeson Case thus:

"Many members of the bar (and some of the members of this court) believe that under the law of this state that the inhibition against marriage contained in each decree until the expiration of six months, was not one which continued the marital status, so as to render invalid a marriage

contracted in a jurisdiction where it would otherwise be valid."

In the notes to Owen v. Owen (178 Wis. 609, 190 N. W. 363), 32 A. L. R. 1142, it is stated:

"When the question as to the validity of the marriage has arisen in a third state or country, that is, a state or country other than that in which the divorce was granted, * * * it has generally been recognized and given effect, assuming that the divorce was effectual to dissolve the former marriage relation, and the remarriage was valid according to the law of the place where it was celebrated, notwithstanding that at the time thereof one of the parties was subject to an inhibition against remarriage imposed by the decree of divorce by statute of the state where the divorce was granted," citing authorities in support of this rule from Alabama, California, Washington, Indiana, Maryland, Colorado, and Missouri.

In the case of Green v. McDowell, 210 Mo. 517, 242 S. W. 168, it was held:

"A marriage in Tennessee, within six months of a decree of divorce rendered in Oklahoma, was valid, though marriage could not be had within such time in Oklahoma."

To the same effect is the case of Bauer v. Abrahams, 73 Colo. 509, 216 P. 259, construing the effect of a Kansas decree of divorce prohibiting remarriage within 6 months, wherein the court held that marriage in New Mexico a few days after the Kansas decree was entered was valid; that the prohibition against marriage within the 6-months period had no extraterritorial effect.

So we conclude that the defendant, at the time of the abduction, could have entered into a marriage in Texas, and there is evidence in the record supporting his alleged purpose to do so. Further, there is nothing in the statute indicating that the purpose of marrying must be immediately followed by a marriage. The purpose to marry might relate to some indefinite future time. It may be

that the defendant intended to keep this girl with his parents in Texas until the expiration of the 6 months, or until she became of marriageable age. The record shows that she might resume her school work in Texas, and there is nothing in the record indicating that the defendant intended in the meantime to live with her in a state of concubinage, unless such fact may be inferred from his moral delinquencies generally.

The girl, who testified for the state, said that prior to leaving she and the defendant frequently talked of marriage some time in the future; that the defendant contemplated marriage is shown by the fact that he procured two marriage licenses, one in Kansas and one in Missouri, and that he was so anxious about it that in both cases, to procure the licenses, he committed perjury. His written communications to the girl's parents indicated that he contemplated marriage. The defendant himself testified that he intended to marry the girl. Where? Presumably in Texas, whither they fled and where he told the girl they would make their home.

The instructions requested, to the effect that, if the evidence showed that the defendant could not legally enter into the marriage relation, he should be acquitted, were properly denied.

If the deduction that the defendant could have entered into a legal marriage in Texas is faulty, this defendant might still be amenable to the penalties of this statute, assuming that the marriage contemplated would in fact have been illegal. Our statute on bigamy makes it a felony for a married person, while that relation exists, to marry another. Manifestly, the second marriage would be an illegal one, but that does not prevent the operation of the statute. The statutes defining both the crime of bigamy and the crime of abduction are designed to preserve the sanctity of domestic relations, and just why, to invoke the respective

penalties prescribed, the marriage contemplated in the abduction case must be a legal one and in a bigamy case an illegal one is hard to understand.

In the case of People v. Cerami, 101 App. Div. 366, 91 N. Y. S. 1027, it was said:

"On a prosecution, under Pen. Code, § 282, subd. 1, for the abduction of a female under 18 for the purpose of marriage, evidence to show that defendant was married to another woman at the time of the offense is inadmissible."

To the contrary, see U. S. v. Zes Cloya (D. C.) 35 F. 493.

We pass now to defendant's second claim that the defendant and this girl had entered into a common-law marriage a few days prior to their secret flight to Texas. On this feature of the case the record shows that Georgia Fields and two other girls, at a public entertainment at the church on Thursday night preceding this flight on Monday, had gone to a well near by to get a drink of water; that the defendant joined them with a dipper; that the two other girls drank and returned to the church; and that the defendant called Georgia aside, and there, acting as a Christian minister authorized to solemnize marriages, assumed to perform a marriage ceremony between himself and the girl, thus:

"I told her that we would have to go through the ceremony, which we did. And she pledged to take J. E. Yeats to be her wedded husband, and I promised to take Georgia L. Fields as my wedded wife. She concluded the avowal in the name of the Father, the Son, and the Holy Ghost, Amen, and she said it together with me, and we parted hands and she came back to the house."

The remarkable ceremonial proceeding thus described was of no force or validity whatever. Since the defendant had just recently been divorced, with a proviso in the decree that he could not remarry for a period of 6 months,

which was clearly effective in this state, and because of the further fact that the other contracting party was under the age of legal consent, this pretended marriage was clearly invalid. Moreover, the conduct of the defendant indicates that he knew that it was invalid—a mere subterfuge to deceive the girl, and for the purpose of creating an excuse for the contemplated abduction, to be used later. There was no public announcement made, no holding out to the public that they were husband and wife. Where persons attempt a marriage in a conventional way, by procuring a license to marry, as was done in this case, and are prevented from consummating such a marriage by legal impediments, they cannot, by the subterfuge of a so-called common-law marriage, do indirectly what they could not legally do by the more conventional mode. A common-law marriage imports good faith. Words and Phrases, First and Second Series, subject "Marriage"; 18 R. C. L. "Marriage", §§ 34, 54, et seq.

The lack of good faith and the evil purposes of the defendant are emphasized by the fact that he twice committed perjury in procuring the marriage licenses; that he made a false return on one of them; that he deceived the girl, and deceived and slandered her parents, and otherwise prostituted his holy office as a Christian minister.

The judgment of the trial court is affirmed.

DOYLE and EDWARDS, JJ., concur.