## V. C. HARVEY v. STATE.

No. A-4959.   Opinion Filed Aug. 11, 1925.
(238 Pac. 862.)

300

F. W. Church, for plaintiff in error.

George F. Short, Atty. Gen., and J. Roy Orr, Asst. Atty. Gen., for the State.

EDWARDS, J. The plaintiff in error will be referred to as defendant, as in the court below.

The defendant was charged by information with the crime of bigamy. A jury was waived, and a stipulation of facts entered into, and the case submitted to the court on such stipulation.

Upon the undisputed facts as set out in the stipulation, it appears that the defendant is a muchly married individual, and given time would surpass the record of Henry VIII. The facts are about as follows: In December, 1920, the defendant, Harvey, obtained a divorce at Tulsa from Mrs. Harvey, I. On February 12, 1921, Mrs. Adams procured a divorce from her husband, and according to prior arrangements between her and the defendant, she and the defendant on February 13th went to the state of Missouri

and were married, she thus becoming Mrs. Harvey, II. This was on the day following her divorce in Oklahoma. From Missouri the defendant, Harvey, and Mrs. Harvey, II, went to Kansas and lived together as husband and wife for about a year, returning to Oklahoma in February, 1922, where they continued to reside together as husband and wife until April 15, 1923, when Mrs. Harvey, II, departed for a visit to Illinois. On the 2d day of June, following, the defendant in Ottawa county, Okla., during the absence of Mrs. Harvey, II, married Inez Vaughn, who thereby became Mrs. Harvey, III. Mrs. Harvey, III, lived with the defendant as his wife until the 11th of June, when, on the return of Mrs. Harvey, II, the defendant was arrested, charged with bigamy. In the stipulation it is agreed that the defendant and Mrs. Harvey, II, went to the state of Missouri for the purpose of evading the restriction in the divorce decrees in the state of Oklahoma; that they considered their marriage in Missouri legal, and there was no divorce of the defendant from Mrs. Harvey, II.

Upon this state of facts the defendant contends that, at the time of the attempted marriage between him and Mrs. Harvey, II, the parties were not competent to enter into a marriage contract, and that their attempted marriage was absolutely void, and that the relation between him and Mrs. Harvey, II, was adulterous.

The state contends, in effect, that the inhibition on marriage contained in the divorce decree of defendant and Mrs. Harvey, II, had no extra territorial effect, and that, as they did not forthwith return to the state of Oklahoma, but removed to the state of Kansas, their marriage in Missouri was legal. And that in any event, before the marriage of defendant to Mrs. Harvey, III, his relations with Mrs. Harvey, II, had ripened into a valid common-law marriage.

A mere recital of the facts discloses that the conduct of the defendant is reprehensible in an extreme degree, and that his defense is such that he entitled to only what the cold letter of the law gives him. It also discloses that Mrs. Harvey, II, was an unfaithful wife to her first spouse, and abandoned her own home, and was a particeps criminis in breaking up the home of defendant. What has befallen her is in the nature of retributive justice. As to Mrs. Harvey, III, she apparently knew the marital status of the defendant at the time she entered the marriage relation with him, and is entitled to no sympathy.

However lacking in the personal equation this case may be, yet, if the marriage between the defendant and Mrs. Harvey, II, is absolutely void, both as a ceremonial or a common-law marriage, he is not guilty of bigamy. 7 C. J. 1158, 1159, § 3, note 19.

Whether or not this marriage is void both as a ceremonial or a common-law marriage is the only question for our determination. Section 510, Comp. Stat. 1921, is in part as follows:

"* * * It shall be unlawful in any event for either party to such divorce suit to marry any other person within six months from the date of the decree of divorcement; and if notice be filed and proceedings in error be commenced as hereinbefore provided, then it shall be unlawful for either party to such cause to marry any other person until the expiration of thirty days from the day on which final judgment shall be rendered pursuant to such appeal. Any person marrying contrary to the provisions of this section shall be deemed guilty of bigamy, and such marriage shall be absolutely void."

Under this statute the decree of divorce is sufficient to dissolve the marriage tie at the time it is rendered, but there is an inhibition in the nature of a penalty on a marriage by the parties with any third person within 6 months from the date of the decree. A marriage within this

state with any other person is bigamous, but going outside of the state for the purpose of marrying and then returning to the state and thus evading the restriction of a divorce decree is not an act of bigamy of which the courts of this state can take jurisdiction under the law then in force. Wilson v. State, 11 Okla. Cr. 471, 184 P. 603; Yeates v. State, 30 Okla. Cr. 320, 236 P. 62; Atkeson v. Sovereign Camp, W. O. W., 90 Okla. 154, 216 P. 467, 32 A. L. R. 1108. The law, however, has since been amended by chapter 119, Session Laws of 1925.

By the terms of the stipulation of facts it is agreed that the defendant, Harvey, and Mrs. Harvey, II, went to the state of Missouri for the purpose of evading the laws of Oklahoma forbidding remarriage for a period of 6 months after the granting of a decree of divorce. The stipulation, however, does not disclose whether it was the intention of the defendant and Mrs. Harvey, II, to ever return to the state of Oklahoma. After their marriage in Missouri they went to the state of Kansas and resided for about one year, and then returned to this state. It is generally held that the inhibition in a decree of divorce has no extraterritorial effect, and is enforceable only in the state where the decree is granted, and that outside of such state the marriage is generally treated as valid, although there is some division in the authorities. Where, however, the parties leave the state of their domicile and go into another state and marry, for the purpose of evading the law of the state of domicile, and forthwith return to the state of domicile, the marriage is generally held void in the state of domicile. Stull's Estate, 183 Pa. 625, 39 A. 16, 39 L. R. A. 539, 63 Am. St. Rep. 776; Com. v. Lane, 113 Mass. 458, 18 Am. Rep. 509; State v. Fenn, 47 Wash. 561, 92 P. 417, 17 L. R. A. (N. S.) 800; Powell v. Powell, 282 Ill. 357, 118 N. E. 786; Frame v. Thormann, 102 Wis. 653, 79 N. W. 39; 176 U. S. 350, 20 S. Ct. 446, 44 L. Ed. 500; Vickers v. Faubion (Tex. Civ.

App.) 224 S. W. 803; Dimpfel v. Wilson, 107 Md. 329, 68 A. 561, 13 L. R. A. (N. S.) 1180, 15 Ann. Cas. 753; Green v. McDowell, 210 Mo. App. 517, 242 S. W. 168; note 32 A. L. R. 1116; Atkeson v. Sovereign Camp, W. O. W., supra; Clark et al. v. Barney et al., 24 Okla. 455, 103 P. 598.

At the time the defendant entered into the marriage ceremony with Mrs. Harvey, II, both parties were inhibited by the decree of divorce from entering into the marriage relation, and, if they had forthwith returned to the state of Oklahoma, their marriage would have been held void in this state under the terms of the statute and the going through the form of a marriage ceremony in a state where the inhibition was not effective and then returning to this state would be a fraud on the laws of this state and the doing indirectly what the statute says shall not be done. So long as the inhibition in the divorce decree of either of the parties continued by the laws of this state, they were absolutely incapable of contracting or consummating a marriage which would be recognized by the courts of this state. But upon the expiration of the inhibition upon the marriage of both the parties, which was on August 12, 1921, the defendant and Mrs. Harvey, II, notwithstanding their relations up to this time had in the eyes of the law of this state been adulterous, were capable of contracting and consummating marriage. When after the period of inhibition they resided together as husband and wife in the state of Kansas, and believed their ceremonial marriage in the state of Missouri was valid, as set out in the stipulation, and relying thereon returned to this state and resided here together and held themselves out as husband and wife for almost a year, such constituted a valid common-law marriage. In re Love's Estate, 42 Okla. 478, 142 P. 305, L. R. A. 1915E, 109; Draughon v. State, 12 Okla. Cr. 479, 158 P. 890, L. R. A.

1916F, 793; Mudd v. Perry, 108 Okla. 168, 235 P. 479, and authorities cited.

While we are decidedly of the opinion that the marriage between the defendant and Mrs. Harvey, II, upon their return to this state during the time they lived together here, had become in all respects a valid and binding marriage under the common law, we believe there is another reason for declining to hold the marriage void. That reason is based on public policy, on the view that a defendant charged with a crime will not be permitted to take advantage of his own wrong.

In the case of Castleberry v. State, 10 Okla. Cr. 504, 139 P. 132, it was said, in substance, that where a defendant had had intercourse with a female prior to the date upon which rape was charged, he would not be heard to say that by reason of his having defiled her she was not of previous chaste character.

In the case of Ellington v. State, 7 Okla. Cr. 259, 123 P. 186, it was held that one who received money as guardian and then embezzled it would not be heard to say he was not the legal guardian; that if he was agent enough to collect he was agent enough to be punished.

In the case of Price v. State, 10 Okla. Cr. 427, 137 P. 736, where embezzlement was charged by an attorney, and the defense was set up that the accused was not a licensed attorney, this court said that a defendant would not be heard to say that he was not authorized to receive the money.

In the instant case, if the marriage was sufficiently valid that under its sanction the defendant resided with the woman married in the state of Kansas for about one year, and under the sanction of such marriage returned to the state of Oklahoma and there resided with and held her out to the public as his wife for more than

a year, he will not now be heard to say that the marriage was void and his relations with her were meretricious.

The conclusion of the trial court that the facts stipulated established the guilt of the defendant is sustained by the law, and the case is affirmed.

BESSEY, P. J., absent, not participating.

DOYLE, J., concurs.