### R. G. DAVENPORT v. STATE.

No. A-3388.   Opinion Filed Jan. 3, 1921.
On Petition for Rehearing Dec. 12, 1921.
(202 Pac. 18.)

(Syllabus.)

1. **Embezzlement—Information Negativing Ownership of Property in Defendant.** In a prosecution for embezzlement under section 7437, Revised Laws 1910, an allegation that the property alleged to have been embezzled was the property of the state, county, and political subdivisions thereof, sufficiently negatives ownership and the right to the property in the defendant, and it is not necessary to specifically allege that he was not the owner of or entitled to same.

2. **Former Jeopardy—Court's Direction to Hold Defendant for Further Prosecution as Preventing Judgment Bar by Sustaining Demurrer.** Under sections 5794 to 5797, inclusive, Revised Laws 1910, if a demurrer to an indictment or information is sustained and the court is of the opinion that the objection to the demurrer may be avoided by a new indictment or information, the direction of the court to hold the defendant for further prose-

cution is sufficient to prevent a judgment bar arising from sustaining the demurrer, if, from the language used in the order, it may be fairly inferred that the court intended that the case be resubmitted to a grand jury or that a new information be filed.

3.    **Indictment and Information—Procedure on Holding Defendant on New Indictment or Information—Necessity for Examining Trial.** When the prosecution for a felony is commenced by the return of an indictment, to which a demurrer is afterwards sustained, and the court is of the opinion that the defects in the indictment may be cured by a new indictment or information, the court has the alternative discretion of directing that the case be submitted to the same or another grand jury or that a new information be filed. In case of filing a new information it is necessary that an examining trial be had unless the same be waived by the accused.

4.    **Limitation of Prosecutions — "Commencement of Prosecution" —Filing of Complaint and Issuing Warrant.** In a felony case in which an examining trial is had, the prosecution is "commenced" when the complaint is filed before the examining magistrate, and a warrant of arrest issued thereon served in due time thereafter.

5.    **Same—New Indictment or Information Relates Back to Original Commencement of Proceeding.** When a demurrer is sustained to an indictment or information for a felony, and the court, at the time of sustaining the demurrer, directs the case to be resubmitted to the same or another grand jury or that a new information be filed, and a new indictment is returned or a new information is filed in obedience to such direction of the court, the prosecution is continuous and relates back to the time of the return of the defective indictment or in case an examining trial was had, to the original commencement of the prosecution before the examining magistrate.

6.    **Same—"Prosecution" Defined.** By the term "the prosecution," as used in a criminal case, is meant the continuous following up, through instrumentalities created by law, of a person accused of a public offense with a steady and fixed purpose of reaching a judicial determination of the guilt or innocence of the accused. It should not be confounded with the written accusation, nor is the term synonymous with criminal action. It consists of all the successive steps, having relation to each other, taken against the accused by the officer or officers charged with the enforcement of the criminal law. It contemplates proceeding judicially and involves all written accusations, including complaints, presentments, indictments, and informations successively and continuously lodged against the accused.

It may comprehend one or more related actions, provided the offense in each instance is identical and the actions are continuous and are brought and maintained pursuant to lawful authority.

7.   **Same—Defective Indictment or Information Sufficient to Place Statute of Limitation in Repose During Pendency.** A statute of limitation confers no vested right, being an act of grace on the part of the state, enabling the accused to be informed of the nature of the state's grievance in time to obtain the facts necessary to his defense. A defective indictment or information apprises the defendant of the character of crime with which he is charged and is sufficient to place the statute in repose during the pendency thereof.

8.   **Appeal and Error—Harmless Error—Indorsement of Names of Witnesses on Information During Trial.** If an order of the court is made, at the request of the state, during the pendency of the trial of a case, that the name of a witness for the state not appearing indorsed on the information be then indorsed thereon, the defendant cannot complain unless he shows that he was substantially prejudiced thereby, and it is immaterial whether, after the order of the court, made in the presence of the defendant and his attorney, the name was actually indorsed.

9.   **Embezzlement—Evidence Sustaining Conviction.** Evidence in this case examined, and held to support the verdict of the jury on question of defendant's guilt.

Appeal from District Court, Seminole County; J. W. Bolen, Judge.

R. G. Davenport was convicted of embezzlement, and he appeals. Affirmed. Pending determination of petition for rehearing, prosecution abated on suggestion of death of defendant.

Asp, Snyder, Owen & Lybrand and Ames, Chambers, Lowe & Richardson, for plaintiff in error.

S. P. Freeling, Atty. Gen., and E. L. Fulton, Asst. Atty. Gen., for the State.

STEWART, Special Judge. R. G. Davenport, plaintiff in error, hereinafter called defendant, was convicted in the district court of Seminole county of embezzlement and sentenced to a term of seven years' imprisonment in the state penitentiary and to pay a fine of $5,021.10. He was tried and con-

victed upon an information in which Mace Herndon, county treasurer, Vernon Kiker, deputy county treasurer, and himself, were jointly charged with the commission of the offense. On application, the trial court ordered a severance, and the defendant appeals to this court from the judgment of conviction.

The defendant complains that the information upon which he was tried is insufficient in that there is no averment that the property alleged to have been embezzled did not belong to the defendant and that he was not entitled to the same.

The defendant was prosecuted under section 7437, Revised Laws 1910, for advising, aiding, and knowingly participating in alleged acts of the county treasurer and deputy county treasurer in converting money and property of the state, county, and political subdivisions of the county, intrusted to the keeping of such officers, to their own use and to the use of the defendant.  Section 7437 reads:

"If any county treasurer, or other officer or person charged with the collection, receipt, safe-keeping, transfer or disbursement of the public money, or any part thereof, belonging to the state or to any county, precinct, district, city, town or school district of the state, shall convert to his own use or the use of any other person, body corporate or other association, in any way whatever, any of such public money, or any other funds, property, bonds, securities, assets or effects of any kind received, controlled or held by such officer or person by virtue of such office or public trust for safe-keeping, transfer or disbursement, or in any other way or manner, or for any other purpose; or shall use the same by way of investment in any kind of security, stocks, loan property, land or merchandise, or in any other manner or form whatever; or shall loan the same, with or without interest, to any person, firm or corporation, except when authorized by law; or if any person shall advise, aid, or in any manner knowingly participate in such act, such county treasurer, or other officer or person shall be deemed guilty of an embez-

zlement of so much of said money or other property, as aforesaid, as shall be converted, used, invested, loaned or paid out as aforesaid; and upon conviction thereof, such county treasurer or other officer or person shall be sentenced to imprisonment in the penitentiary at hard labor for a term of not less than three years nor more than twenty-one years, and also to pay a fine equal to double the amount in money or other property so embezzled as aforesaid; which fine shall operate as a judgment lien at law on all the estate of the party so convicted and sentenced, and shall be enforced by execution or other process for the use of the person whose money or other funds or property as aforesaid shall have been so embezzled; and in all cases such fines, so operating as a judgment, shall be released or entered as satisfied only by the person in interest, as aforesaid.''

The Legislature unquestionably had the power to enact that the malfeasance of officers intrusted with public property and money as set forth in the section quoted should constitute the crime of embezzlement, and that any person advising, aiding, or in any manner knowingly participating therein is guilty of the same crime. Therefore, in determining whether or not the information states an offense, we must look to this particular legislative enactment, and not to the law relating in general to embezzlement. An indictment or information which sets out the elements of the offense as contemplated in the foregoing statute and in substantial compliance with the language of the section would be sufficient.

The information now before this court is verbose, replete with repetition, lengthy, and tedious. Perhaps it would not serve as a model of excellent pleading, but we think it was sufficient to place the defendant on trial. To set the same out in full would greatly incumber this opinion, which, on account of the numerous questions raised by learned counsel for defendant, must necessarily be extended, and would serve no useful purpose. The prosecution grew out of an alleged un-

lawful conversion by the defendant in collusion with Mace Herndon, county treasurer, and Vernon Kiker, deputy county treasurer, of Seminole county, of certain tax sale certificates to lands bid in by the county at a delinquent tax sale held by the county treasurer and the subsequent appropriation of the redemption money paid by the owners of the land to the county treasurer in the sum of $2,510.55 to the use of the defendant and of the officers named by show of fraudulent assignments of the tax sales certificates to the defendant, executed by Mace Herndon, county treasurer. The information contains all the averments required by the statute under consideration, necessary to charge the offense against the county treasurer and his deputy, and also charges that the defendant, Davenport, knowingly, willfully, wrongfully, fraudulently, and feloniously connived with, aided, and advised the county treasurer and participated in the proceeds of a check for $2,510.55 given to said Davenport by the county treasurer purporting to be in payment of the redemption money received from the owners of the lands to redeem tax sale certificates so assigned to Davenport; said check being drawn upon and paid out of funds held by the county treasurer and belonging to the state of Oklahoma, Seminole county, and the political subdivisions thereof. The information alleges that the money received by the defendant belonged to the state of Oklahoma, Seminole county, and the subdivisions thereof, and that the tax sale certificates were the property of and belonged to the state of Oklahoma and county of Seminole and subdivisions thereof.

The office of an information, so far as concerns the defendant, is to apprise him of all matters necessarily inhering in the crime which the state expects to establish by the evidence as being committed by the defendant, and, if such matters are pleaded so as not to mislead the defendant, he is in no position to complain. In the case at bar, can it be said that the averments in the information would lead the defend-

ant to believe that he was being prosecuted for purloining or embezzling his own property? The substantial rights of the defendant must always be protected; the right to a fair trial is paramount; but, in the light of modern jurisprudence, it is time for those seeking protection from the courts to refrain from threadbare and hypercritical objections having no reasonable foundation and which tend to impede rather than to accelerate the wheels of justice. If an averment in the information in the present case to the effect that the property did not belong to the defendant were necessary, the allegation that the property belonged to the state of Oklahoma, Seminole county, and the subdivisions thereof, sufficiently negatives ownership in the defendant.

The defendant next urges that the information shows on its face to be barred as a matter of law.

Our attention is called to the following section of Revised Laws 1910:

"Upon considering the demurrer, the court must give judgment either sustaining or overruling it, and an order to that effect must be entered upon the minutes." Section 5794, Rev. Laws.

"If the demurrer is sustained, the judgment is final upon the indictment or information demurred to, and is a bar to another prosecution for the same offense, unless the court, being of opinion that the objection on which the demurrer is sustained may be avoided in a new indictment or information, direct the case to be resubmitted to the same or another grand jury, or that a new information be filed." Section 5795, Rev. Laws.

"If the court do not direct the case to be further prosecuted, the defendant, if in custody, must be discharged, or if admitted to bail, his bail is exonerated, or if he have deposited money instead of bail, the money must be refunded to him." Section 5796, Rev. Laws.

"If he court direct that the case be further prosecuted, the same proceedings must be had thereon as are prescribed in this article." Section 5797, Rev. Laws.

The defendant asserts that the following allegations in the information show that the prosecution was barred, to wit:

"That at the January term of the district court of the Seventh judicial district of the state of Oklahoma, within and for said county of Seminole and state of Oklahoma, had and held at Wewoka in said county and state on the 3d day of January, A. D. 1916, an indictment was duly returned by the grand jury against the said Mace Herndon and said Vernon Kiker and the said R. G. Davenport for the offense, crime and felony herein alleged, and a demurrer thereto was thereafter on or about the —— day of October, 1916, sustained to said indictment, and an order was made and duly entered upon the records of said court that the defendants be held to appear before a justice of the peace."

It is contended that, under section 5795, supra, the prosecution is barred in that the alleged order of the court that "the defendants be held to appear before a justice of the peace" is not a sufficient compliance with the statute, which requires an order directing that the case be resubmitted to the same or another grand jury, or a new information filed.

In so far as the pleading may be intended to show that the case is not barred by the judgment on the demurrer, the same is mere surplusage. The burden would be upon the defendant to interpose and prove any matters constituting a judgment bar relied upon as a defense. But assuming, arguendo, that such duty rests upon the state, we are of the opinion that the allegations with reference to the order made by the court are sufficient to show that it was the intention of the court that the cause should be further prosecuted. Section 5795, supra, was taken from the statutes of California by the Legislature of the territory of Oklahoma. Its present form is the same as originally enacted, except a slight change

since statehood to comply with our Constitution, which authorizes prosecutions in courts of record to be maintained either by indictment or information. Under the laws of the territory of Oklahoma, a felony could be prosecuted only by indictment returned by a grand jury. The words "or a new information be filed" have been added by the Legislature to the section as it was originally enacted because of the constitutional change.

The Supreme Court of the territory, in Johnson v. Territory, 5 Okla. 695, 50 Pac. 90, construing this statute, says:

"This statute, however, does not require that the order resubmitting the case to the grand jury should be in any particular form, and any language which shows that the court gave such a direction to resubmit the case is sufficient."

In the case then being considered, the trial court had ordered that "the defendant be held under his present bond to await the action of the grand jury, this term." The Supreme Court in that case further said:

"No other construction can be placed upon the two orders of the district court in sustaining the demurrers to the former indictments than that the matter was to be resubmitted to the grand jury. The defendant was ordered held under his present bond to await the action of the grand jury, and this meant that the grand jury was to consider the case. There could be no action upon the matter without the consideration of the grand jury, and the plain and clear intendment of the order was that the grand jury should act upon the case, and this is equivalent, when couched in the language here stated, to a direction that the case be resubmitted to the grand jury."

Under the Constitution of this state, the usual and ordinary method of prosecuting for a felony is by information filed in the district court after a preliminary examination before an examining magistrate. Justices of the peace are examin-

ing magistrates. Opportunity afforded the accused to have a preliminary examination is the initial step toward filing an information. The information in this case does not purport to set out in detail the order of the court, the language of the pleader being general in its nature; but, if we assume that the court used the identical verbiage, we are forced to hold that the direction that defendants be held to appear before a justice of the peace is equivalent to an order that he be given the opportunity for an examining trial preliminary to filing an information. Such must be the reasonable intendment of the language used. Assuredly an order containing such language would be in effect a direction that the case be further prosecuted and would meet the requirements of section 5797, supra, which reads:

"If the court direct that the case be further prosecuted, the same proceedings must be had thereon as are prescribed in this article"—referring to the article on "Proceedings Before Trial" in our Code of Criminal Procedure.

The defendant cites decisions from California and Utah construing this statute, but the authorities pointed out only go to the extent of holding that a mere leave of the court granted to the state to further prosecute is not sufficient; that there must be an order of the court directing the case to be further prosecuted.

By reference to the case-made, however, we discover a stipulation entered into by the state and the defendant, not adverted to in the defendant's brief, which reads as follows:

"It is stipulated that an indictment was returned by the grand jury of Seminole county, duly impaneled against the defendant named in the information upon which this defendant is on trial, and said indictment was returned and filed on March 3, 1916, in the office of the clerk of this court, attempting to charge the same alleged public offense now set out by information herein; and said indictment was filed in case No. 1912 on the criminal docket of this court.

"That on September 29, 1916, a demurrer filed by the defendant to said indictment was sustained and order entered directing the county attorney to prosecute by information, which said order was entered upon the criminal trial docket of said court and reads as follows:

"Defendant ordered held under bond in same amount.

"County attorney ordered to prosecute by information.

"Bond before Jessie Day October 7, 1916."

And also the following stipulation:

"A complaint was filed attempting to charge the offense alleged in said information, and to the information herein, before Jessie L. Day, justice of the peace at Wewoka on the 20th day of December, 1916, and an information was thereafter on the 3d day of March, 1917, filed by the court attorney, and in this court, and being the information upon which the defendant, R. G. Davenport, is on trial in this case."

In view of the solemn admissions of the defendant and the unquestioned entry on the trial docket of the district court, we are at a loss to understand why the defendant takes up so much space in his brief and consumes the court's time over a contention wholly unsupported and without the semblance of merit. We hold that the information does not on its face show that the prosecution is barred, and further that, under the record in this case, the absence of a judgment bar arising from the sustaining of the demurrer has been conclusively established.

Adverse disposition having been made of the foregoing objections, we now consider the final thrust of the defendant at the information, namely, that, the defendant having been proceeded against by indictment, further prosecution could be had only by an order of the trial court submitting the case to another grand jury. In support of this astonishing suggestion, we are cited to Ex parte Dodson, 3 Okla. Cr. 514,

107 Pac. 450, a case which has no bearing whatever upon the question presented. In that case the accused had been prosecuted in the county court by an indictment returned by the grand jury for a misdemeanor to which indictment a demurrer was lodged by the accused and afterwards sustained by the court. In the indictment several persons were charged jointly with the commission of the offense. After sustaining the demurrer, they were discharged and their bail exonerated. At that time section 5795, supra, had not been amended to its present form; the only then existing statutory authority being to "direct the case to be resubmitted to the same or another grand jury," in case of the happening of the contingencies defined in said section. The county court made no order of resubmission. The accused were immediately thereafter prosecuted by information in the county court for the same offense, and, on being arrested and failing to furnish bail, were committed to jail pending trial. Relief was sought in this court by habeas corpus. It was held that the county court had no power or authority to order a resubmission of any case to the grand jury, but that the sustaining of the demurrer to an indictment charging a misdemeanor was no bar to a subsequent prosecution by information for the same offense. The writ of habeas corpus was denied.

To dispose of the contention now being considered requires but a careful perusal of section 5795, supra, and the sections immediately following as above quoted. Circumlocutory discussion is vain and useless. Without hesitancy, we hold that, upon the sustaining of a demurrer either to an indictment or to an information, the district court, if of the opinion that the objections upon which the demurrer is sustained may be avoided in a new indictment or information, may determine that further prosecution be had, and, in the event of so determining, the court has the alternative discretion to resubmit the case to the same or another grand

jury, or to direct that such further prosecution be had by information. In case, however, of filing an information, there must be an examining trial as a basis therefor unless same is waived by the accused. An examining trial was had in the case at bar, before filing the information.

Following the order in defendant's brief, we now reach defendant's assignment that the verdict of the jury is not warranted by the law and the evidence. In this connection we are asked to hold, as a matter of law as well as of fact, that the prosecution was barred by limitation. The information was filed March 3, 1917, and charges the offense to have been committed on September 4, 1913. The prosecution was barred unless it appears that the statute was tolled or suspended. We have held that the averments in the information concerning the sustaining of the demurrer and the order of the court to further prosecute were unnecessary as affecting a judgment bar, but they may be considered as a showing by the state that limitation was suspended or tolled.

Having held that the prosecution was not barred by the judgment of the court on the demurrer, we now face a more important and interesting question, one which, so far as the writer of this opinion is informed, has not before engaged the attention of this court. Nor has the learned Assistant Attorney General been able to cite us to any decision of this court bearing on the subject. Counsel for defendant very plausibly contend that, assuming that the prosecution is not barred by judgment on the demurrer, limitation obtains because the information upon which the defendant was put on trial was not filed within three years from the date of the alleged commission of the offense. Counsel claim that the invalid indictment afforded no life to the prosecution and did not operate to suspend the running of the statute. Especial

force is attributed to this contention arising from the fact that this state has no statute specifically authorizing the excluding time during which an indictment or information held by the court to be insufficient is pending in computing the period of limitation. In support of the propositions made the defendant cites the following authorities: Weston v. State, 63 Ala. 155; Coleman v. State, 71 Ala. 312; Stafford v. State, 59 Ark. 413, 27 S. W. 495; State v. Owen, 78 Mo. 367; People v. Buckner, 28 Ill. 340, 117 N. E. 1023, 3 A. L. R. 1323; State v. Child, 44 Kan. 420, 24 Pac. 952; Boughn v. State, 44 Neb. 889, 62 N. W. 1094; People v. Lindenborn, 23 Misc. Rep. 426, 52 N. Y. Supp. 101; Berkley v. Com., 164 Ky. 191, 175 S. W. 364; State v. Disbrow, 130 Iowa, 19, 106 N. W. 263, 8 Ann. Cas. 190; U. S. v. Ballard, 3 McLean, 469, Fed. Cas. No. 14507; Redfield v. State, 24 Tex. 133; State v. Precovara, 49 La. Ann. 593, 21 South. 724; State v. Gibson, 108 La. 464, 32 South. 332; Copeland v. State, 14 Ga. App. 109, 80 S. E. 211; Wood on Limitation (3d Ed.) § 252, and notes; State v. Clemens, 40 Mont. 567, 107 Pac. 896; Ex parte Hayter, 16 Cal. App. 211, 116 Pac. 370, 374; State v. Crook, 16 Utah, 212, 51 Pac. 1091.

It seems that it is generally held, in those states where the statutes require that an indictment or information be presented within any specified period of time after the commission of the offense, that, if an indictment is presented or information filed within the statutory time and the same is held by the court to be insufficient, any other indictment or information attempting to charge the same offense must be presented within the statutory time from the commission of the offense, and that the pendency of the indictment or the information which was set aside will not toll the statute of limitations, in the absence of a statute so providing; but it is not so held where the statute provides that the "prosecution" must be commenced within the specified period.

We call attention to the following sections of our statutes applicable to the case at bar:

"5624. There is no limitation of the time within which a prosecution for murder must be commenced. It may be commenced at any time after the death of the person killed.

"5625. In all other cases a prosecution for a public offense must be commenced within three years after its commission.

"5626. If when the offense is committed the defendant be out of the state, the prosecution may be commenced within the term herein limited after his coming within the state, and no time during which the defendant is not an inhabitant of or usually resident within the state, is part of the limitation."

When is a prosecution "commenced"? Is it commenced at the beginning or at some intermediate stage? We think the rule is correctly stated in 12 Cyc. 258, wherein it is said:

"If a statute provides that an indictment must be found within the period of limitation, a failure to find the indictment within such period bars the prosecution of the offense, and making a complaint and procuring a warrant for the arrest of the accused does not take the case out of the statute. On the other hand, where the statute simply provides that the prosecution must be commenced within a specified period, a complaint and warrant of arrest issued thereon and executed without unnecessary delay will constitute a commencement of the prosecution."

Of course, where an indictment is returned by the grand jury without an examining trial as in the case at bar, the prosecution is commenced at the time of the return of the indictment.

Defendant's counsel express the view that, in this state, a prosecution is not commenced until the return of an indictment or the filing of an information. It is not of far-reaching importance in this case whether a prosecution for a felony

is said to commence with the filing of the complaint, in case one is filed, or when the formal charge is made in the district court. The prosecution of the defendant herein was barred by limitation in either case unless the action of the trial court continued the prosecution commenced by the filing of the indictment. We, however, invite attention to section 5673, Revised Laws 1910, defining the duties of a magistrate in an examining trial:

"At the examination the magistrate must, in the first place, read to defendant the complaint on file before him. He must also, after the commencement of the prosecution, issue subpoenaes for any witnesses required by the prosecutor or the defendant."

It is evident that our lawmakers contemplated that the proceedings before the examining magistrate should constitute the commencement of a prosecution and that the filing of the information was an intermediate step in the prosecution. This view receives further support from section 17, art. 2, Constitution, wherein it is provided that "prosecutions may be instituted in courts not of record upon a duly verified complaint." Evidently, the constitutional provision as to the institution of prosecutions applies to the preliminary examinations for felonies as well as to prosecutions for misdemeanors. State v. Fulkerson, 16 Okla. Cr. 250, 182 Pac. 725.

Returning to the real question now under consideration, we will say that, on thorough examination of all the authorities offered by defendant and the respective statutes upon which each is based, we do not find a decision based upon a similar or analogous statute to ours which holds that the setting aside of an indictment or information, by way of demurrer or otherwise, operates to terminate a prosecution already begun, where the court directs that the case be resubmitted or a new information filed. The United States, Illinois, Missouri, Nebraska, New York, and some other jurisdictions

have statutes requiring that the indictment be filed within a specified period after the commission of the offense. Under such statutes, it is generally held that failure to lodge a valid indictment or information, as the case may be, within the specified period, bars prosecution. In this connection, we again direct attention to section 5796, Rev. Laws 1910, above quoted. The language therein used does not imply that "another" prosecution be had, but that "the case be further prosecuted"; in other words, that the prosecution be continued, as further prosecution implies past prosecution. A prosecution is one thing, and the means used in prosecuting, another. The authorized means may change from time to time, but the prosecution goes on whatever the means used. It could hardly be said that a person, who had been arrested and compelled by the officers of the law to appear in court to answer an accusation against him, even though based upon a defective or insufficient complaint, information or indictment, had not been prosecuted. We are aware of no other term to use in order to express what had been done in such a case. The word "prosecute" is derived from the Latin word "prosequor," which, in turn, is a combination of two Latin words, "pro," meaning for or forward, and "sequor," to follow; the prefix "pro" being added to intensify the idea of following. It was incorporated into our language to convey an idea that originally we had no word to express. It signifies not only "to follow," but "to follow intensively," without intermission. Webster gives the following definitions:

"To follow or pursue with a view to reach, execute or accomplish; to carry on, to continue; to pursue (a person) by legal proceedings for redress or punishment."

The "prosecution" in a criminal case is the continuous following up, by instrumentalities created by law, of a person accused of an offense against the law with a steady and fixed

purpose of reaching a judicial determination of the guilt or innocence of the accused. It should not be confounded with the written accusation, nor is the term synonymous with "criminal action." It consists of all the successive steps, having relation to each other, taken against the accused by the officer or officers charged with the enforcement of the criminal law. It contemplates proceeding judicially, and involves all written accusations, including complaints, presentments, indictments, and informations successively and continuously lodged against the accused. It may comprehend one or more related actions, provided the offense in each instance is identical and the actions are continuous and are brought and maintained pursuant to lawful authority.

It is reasonable to say that the Legislature, in enacting sections 5794 to 5797, inclusive, Revised Laws 1910, intended to safeguard the state against probable mistakes of prosecutors; the idea being that when a prosecution is once commenced and the defendant informed of the crime charged, the prosecution, under judicial sanction, could be continued and limitation remain in repose until a final adjudication on the merits, notwithstanding mistakes of the prosecutor due to human frailty, not working to the substantial prejudice of the defendant.

The statute of limitation confers no vested right, being an act of grace on the part of the state enabling the accused to be informed of the nature of the state's grievance in time to obtain the facts necessary to his defense. A defective indictment apprises the defendant of the character of crime of which he is accused. He suffers no substantial prejudice by the state being permitted to meet technical requirements. The leading authority from which the defendant quotes is State v. Disbrow, 130 Iowa, 19, 106 N. W. 263, 8 Ann. Cas. 190. The following excerpt from the extended quotation epitomizes the views quoted:

"It seems to us a reasonable and just proposition that, in the absence of any statute saving such right to the state, the running of the statute of limitations ought not to be interrupted or suspended by the return and pendency of an indictment upon which no valid conviction or judgment can be founded."

If defendant's counsel, however, had examined the authority cited more closely, they would have found the following language in the same opinion:

"Our statute (Code, § 5165) provides that an indictment in this class of cases must 'be found within three years after the commission of the offense and not afterwards.' In some of our sister states the corresponding provision is that 'prosecution must be begun' within the stated limit. The beginning of a prosecution and a finding of an indictment are not equivalent expressions. A prosecution is begun when an information is filed before a magistrate and a warrant issued for the defendant's immediate arrest. An indictment is found when it is presented by the grand jury in due form in open court and filed with the clerk."

The Supreme Court of Tennessee, in the case of Hickey v. State, 131 Tenn. 112, 174 S. W. 269, has construed a limitation statute similar to ours which reads as follows:

" 'All prosecutions for misdemeanors, unless otherwise expressly provided, shall be commenced within twelve months next after the offense has been committed.' Shannon's Code, 6942.

" 'A prosecution is commenced, within the meaning of this chapter, by the issuance of a warrant, or by binding over the offender.' Shannon's Code, 6946."

The court uses the following language:

"It is the 'prosecution' which must be commenced within 12 months, not the finding of the indictment. It seems clear, therefore, that when the case was recommitted to the grand jury and a new and valid indictment preferred in this manner,

there was no break or intermission of time in the prosecution of a defendant in the criminal court, and, the first indictment having been found within 12 months, the case is not barred by the statute of limitations.''

In Berkley v. Commonwealth, 164 Ky. 191, 175 S. W. 364, the statute under which defendant was prosecuted contained a limitation provision in the following words:

"All prosecutions under this section shall be instituted within four years after the commission of the offense.''

Construing the provision the Kentucky court in the syllabus to the opinion held:

"Where an indictment is dismissed for insufficiency, with leave to resubmit to the grand jury, and the matter is again submitted without releasing accused, and a new indictment is returned, the prosecution is continuous, and dates from the first indictment.''

The question presented not having been determined heretofore by us, this court now announces the rule that, where a demurrer is sustained to an indictment or information for a felony, and the court, at the time of sustaining the demurrer, directs the case to be resubmitted to the same or another grand jury or that a new information be filed and a new indictment is returned or a new information is filed in obedience to such direction of the court, the prosecution is continuous and relates back to the time of the return of the defective indictment or, in case of an examining trial, to the original commencement of the trial before the examining magistrate.

Next the defendant urges that the state failed to prove the averment in the information that the defendant was a nonresident of the state and had not been an inhabitant of or usually resident thereof during the three years next preceding the filing of the information.

The court gave liberal instructions in favor of defendant to the jury on the question of defendant's inhabitancy and residence of the state during the period of limitations. Having held that the prosecution was commenced within the statutory period, it follows that the court should not have given the instruction. Plaintiff in error, however, cannot complain, and, if it were necessary for us to pass upon the question of the alleged insufficiency of the evidence in that respect, we would be forced to find the same sufficient.

There was testimony showing statements of the defendant that he was a resident of Kansas City, Mo., and there was also introduced, without objection on the part of defendant, an affidavit filed in the district court of Okfuskee county, by defendant in a civil action in which defendant was interested, stating that he was a resident of Kansas City, Mo. There was also testimony, in addition to his own, tending to show that he was a resident of Oklahoma City. It was the jury's province to determine the question of fact. It is well settled that, where the statute of limitations is relied upon for a defense in a criminal action, the burden is upon the defendant to prove by a preponderance of the evidence any matter showing that the statute of limitations is not tolled. In Coleman v. Territory, 5 Okla. 201, 47 Pac. 1079, the court says:

"Where, in a criminal case, the defense is extrinsic, not traversing any of the material elements of the offense, and the facts upon which such defense is based are peculiarly within the knowledge of the defendant, he will be held to establish those facts to the satisfaction of the jury, by the preponderance of the evidence, before he is entitled to an acquittal."

And it was there held that, in a criminal case, the question of inhabitancy or residence of a defendant as affecting the statute of limitations is extrinsic, and does not traverse any of the material elements of the offense. To the same effect is Rea v. State, 3 Okla. Cr. 281, 105 Pac. 386, 106 Pac. 982.

Next the plaintiff in error assigns that the verdict is not sustained by, and is contrary to, the evidence on the question of defendant's guilt. Apropos, the defendant has much to say concerning the witness Kiker, an accomplice, who was one of the principal witnesses for the state. It is asserted that there is no evidence corroborating the testimony of Kiker.

The evidence in this case is intricate and voluminous. The record thereof in large part consists of testimony as to and copies of the files, records, tax receipts, tax certificates, tax rolls, bank deposits, and other kindred matters pertaining to the office of county treasurer of Seminole county. We have examined the same over and over, and find that it would consume too much time and would be of no avail to incorporate in this opinion anything more than a resume of the most salient and vital matters in evidence.

It appears: That practically all of the land in Seminole county was Indian land, and that since statehood, and up to the year 1912, the collection of taxes on such lands had been held up by an injunction in the federal court, which injunction was dissolved in the year 1912. That the lands had been regularly assessed for taxes, but no collection of taxes had been made thereon because of the pendency of the injunction proceedings. That, after the dissolution of the injunction, there was due and unpaid taxes on said lands for the years 1908, 1909, 1910, and 1911, and also that taxes for year 1912 were soon to become due. That, in 1912, the treasurer advertised said lands for sale for the purpose of collecting the taxes and penalties due and accrued thereon; and that on November 6, 1912, and for several days following, such lands were sold and bought in almost entirely by Seminole county.

That prior to the time of the sale, the defendant came to Seminole county and had an interview with Mace Herndon, the county treasurer, with reference to the purchasing

of some of said lands at the tax sale. That he drove over the country, in some instances in company with Vernon Kiker, deputy county treasurer, and selected a list of several hundred tracts of land, and afterwards agreed with the county treasurer for the county to purchase said lands, obtaining tax sale certificates in the name of the county, with the understanding that the defendant would furnish a list of the lands that he wished to purchase and thereafter obtain assignments of the tax sale certificates. That on November 7, 1912, he presented to the treasurer a list of the lands and placed in the treasurer's hands his personal checks totaling $30,000; it being claimed by defendant that such sum was the estimated amount required to pay the county for the assignments of tax sale certificate to the lands he desired.

It appears that the treasurer did not cash the checks of defendant, nor in any manner place the same to the credit of Seminole county, but that they were placed in a bank at Wewoka, in said county, and there remained in escrow, never at any time being cashed or turned over to the county by the treasurer. Defendant claims that said checks were placed in the hands of the treasurer in good faith with a view to his becoming the lawful owner of the tax sale certificates from November 7, 1912; that the treasurer, on account of the rush of business in his office, was unable to prepare the tax sale certificates and execute assignments for some months after the date of the alleged purchase thereof; that afterwards, as the treasurer would issue the certificates, and as a matter of convenience to the treasurer, he would pay for the certificates as they were issued by other checks made by him. The evidence shows that in March or April, 1913, and from time to time, thereafter, the treasurer began and continued to deliver to defendant tax sale certificates dated November 7, 1912. This practice continued during the year, 1913.

The witness Kiker, who was deputy treasurer at the time of the coming of defendant into Seminole county and during all the time up to and including the acts alleged in the information, testifies that there was an agreement with the treasurer and defendant that the $30,000 in checks delivered by defendant to the treasurer would not be cashed and would not be turned into the county, but would be merely held by Mace Herndon individually to protect him in the issuance and delivery of the assignments and in his part of the profits of the transactions; that, immediately after the sale of the lands for taxes, the landowners began to come in, and continued to come in throughout the year 1913, and redeem their lands; that there was an agreement for the treasurer to protect defendant in his tax sale certificates as of the date November 7, 1912, and issue all tax sale certificates to Davenport as of that date; that the 18 per cent. per annum penalty accruing, under the law, on said tax sale certificates after November 7, 1912, was to be divided equally among the treasurer, Herndon, the deputy treasurer, Kiker, and defendant, Davenport; that the treasurer was to protect Davenport by delivering the assigned certificates as the redemption money came in, thus enabling Davenport to meet the payments required from time to time; that the treasurer, the deputy treasurer, and Davenport, acted throughout in accord with this agreement; that later and about June, 1913, the county treasurer's office began to issue assigned tax sale certificates to Davenport without the payment of any money therefor, on agreement that, as the redemption money was paid in, the same would be turned over to Davenport to be divided between Davenport and Kiker; and that the check for $2,510.55, delivered by the treasurer to Davenport and collected by Davenport, was redemption money for 44 certificates, for some of which no money was paid; that it was the agreement between himself and Davenport that he (Kiker) should have one-half of the

proceeds of the certificates for which no money had been paid; that the check for $2,510.55 was delivered to Davenport on August 16, 1913, and paid August 20, 1913, out of the money in the redemption fund of Seminole county; that, pursuant to said agreement, Davenport delivered to witness Kiker his check for $540.16, for his one-half interest in the tax sale certificates for which no money had been paid.

There is corroborative evidence showing that in March, 1913, the treasurer began to issue tax sale certificates to Davenport as of date November 7, 1912, and that, as lands were redeemed, the redemption money as collected, including the entire penalty from November 7, 1912, was turned over to Davenport and reinvested in other certificates dated November 7, 1912.

It is not disputed that all the certificates embraced in the redemption money for which the check for $2,510.55 was delivered to Davenport on August 16, 1913, were obtained long after November 7, 1912, though executed as of that date, and the records introduced show that there was nothing paid into the county for some of these tax sale certificates until after said check was cashed by Davenport.

It also appears that it is the custom of county treasurers, and was the custom of the county treasurer of Seminole county, at the time of assignment of tax sale certificates, to issue to the purchaser back tax receipts for the previous years for which the land had been sold for taxes, it being the practice to execute these receipts in triplicate, one to be delivered to the purchaser and the others to be retained, one for the office of the county clerk and one for the office of the county treasurer, and that, based upon these back tax receipts, the funds were distributed to the state and county and to the various political subdivisions thereof. There were a number of back tax receipts introduced in evidence dated

September 4, 1913, for identical back taxes covered by some of the tax sale certificates involved in the check for $2,510.55. The evidence shows that Davenport knew all along that the checks for $30,000 made by him were not cashed, and that neither the proceeds nor the checks were turned over to the county. The check for $540.16 delivered to Kiker by Davenport on August 19, 1913, was drawn on the City National Bank of Oklahoma City, and, on the same day, deposited by Kiker, together with an additional sum of $500, in said bank. Said check was made payable to Kiker personally, and not to Mace Herndon, treasurer of Seminole county. Davenport claims that the check was delivered to Kiker for the payment of tax sale certificates that he wished to purchase, but he does not state what certificates, nor claim that he ever received or demanded any certificates for this money. At the trial of the case, he introduced in evidence a great number of canceled checks made to Mace Herndon in various and divers amounts, claimed to be in payment for tax sale certificates, but this particular check he was unable to produce and did not have present at the trial. The evidence of the cashier of the bank shows that the check and other money was deposited by Kiker to his credit in said bank on August 19, 1913, and the bank's books showed the same. Kiker says that he not only turned over the proceeds of said check but the $500 which he states he received from similar deals in the payment of taxes to the county; his testimony being to the effect that he paid this money to the county afterwards with a view to protect himself, and not at the request of Davenport.

There is testimony by R. J. Moore, deputy county treasurer of Okfuskee county, that Davenport, at a time when he was purchasing tax sales certificates, stated to Moore, who was then making the race for treasurer, that he had just as well go out of the office worth $50,000 as to go out a pauper.

There is also testimony that Davenport, during the time he was engaged in the handling of the tax sale certificates in Seminole county, stayed a great portion of the time in the treasurer's office, and assisted the treasurer in the duties of the office, carrying with him his stenographer from Oklahoma City, who also worked in the office under Davenport's directions; that many certificates were written and other clerical work of the office done by defendant or under his direction; and that, at all times, he was in a position to know just how the office of county treasurer was being conducted.

The evidence also shows that both the county treasurer and Kiker, the deputy, had been convicted for discrepancies arising in the office at the time of the trial; but they had not been tried upon the information herein.

We think that the testimony of Kiker was fully corroborated by facts and circumstances shown by other evidence than his own testimony and by the conduct and admissions of defendant, Davenport. It is unnecessary to discuss at length the law as to the corroboration of an accomplice. This question has been before this court to such an extent, and so many opinions have been written on the subject, that the law ought by this time to be familiar to both the bench and bar of the state. The rule, simply stated, is that the testimony of an accomplice must be corroborated by other evidence tending to connect defendant with the commission of the offense; that it is not necessary that such testimony, standing alone, should be sufficient to convict defendant; and that incriminating circumstances shown by the evidence are sufficient, if they tend to connect the defendant with the commission of the offense.

It is possible that, if the defendant had deposited with the treasurer of Seminole county, on November 7, 1912, good and valid checks, with authority on the part of the treasurer

to cash the same and turn the proceeds to the county, sufficient to cover tax sale certificates which he now claims he at that time purchased, and that he actually parted with the title to the money represented by the checks at the time of delivering same and acted throughout in good faith, he would have been entitled to the benefit of the assignment of such tax sale certificates dated November 7, 1912, and that, if the treasurer was unable to perform the clerical duties of writing up the certificates, assigning same and issuing back tax receipts, the assignments might have been properly executed as of date November 7, 1912, and the rights of Davenport in and to the same would have obtained as of that date. In paragraph 6 of the court's instruction, this question was fairly submitted to the jury, and we think the evidence fully supports the jury in finding that Davenport did not act in good faith. It is evident that the checks for $30,000 were placed in the hands of the treasurer with the understanding not to cash the same and as a pretext for converting property belonging to the state and county to the use of the conspirators and that each of the transactions thereafter was a part and parcel of and together constituted a system of fraud begun and continued by the treasurer, his deputy, and defendant, Davenport. The records of the treasurer's office introduced in evidence show in many places that the amounts, accredited as paid by Davenport at different times, were even less than the back taxes and penalties due on November 7, 1912.

The fact that the tax receipts introduced showed the back taxes on many tracts of the lands included in the check for $2,510.55 to have been paid September 4, 1913, after Davenport had received and cashed the check, tends strongly to prove fraud. Recurring again to the evidence, we may say that there is testimony to show that the back tax receipts issued September 4, 1913, were paid for by the surrender to the county treasurer of what was called a "certificate of error"

for $415, which certificate was issued by the board of county commissioners to Davenport on September 3, 1913, for taxes which were alleged to have been paid erroneously on other lands. The receipts issued were dated September 4, 1913, and showed that said back taxes were paid with the "certificate of error," which he did not receive until September 3, 1913. There is evidence also to show that the certificate of error was obtained fraudulently.

The fact that, immediately after receiving the check for $2,510.55, on August 16, 1913, Davenport made the check for $540.16 to Kiker, the deputy treasurer, raises more than a suspicion against the defendant. There is no evidence that any other check made by Davenport for tax sale certificates was payable to any other person than Mace Herndon, county treasurer, though the defendant introduced many such checks in evidence. In dealing with the treasurer of the county, it is remarkable that a check should be made payable to his deputy. Davenport, though requested on cross-examination, could not or did not produce the check, notwithstanding the information itself apprised him that it would be in issue. The defendant was a man of business experience and education, having at one time practiced medicine, and, under the circumstances, the jury had a right to consider the fact that, with his knowledge and implied consent, the checks for $30,000 were not cashed and turned into the county as going to the question of whether or not he acted in good faith.

It is impossible, from the record, to discover with exactness what money Davenport paid into the county and what money was received by him. It would run into thousands of dollars on either side. But, if the testimony supporting the state's contentions is true, and in view of the verdict, we must so assume. Davenport acquired the tax sale certificates out of which he realized the sum of $2,510.55, being the item

upon which he was tried, under a system of fraud perpetrated against the state and Seminole county in which he was one of the chief actors. The whole scheme being conceived in fraud, each and every transaction growing out of the same was tainted with the original fraud, and hence he could not and did not acquire any title to such certificates. In addition to the original fraudulent inception, there is convincing evidence of immediate fraud. The officers and not the county itself participated in the fraud. In this case the county does not stand in the same shoes as the officers. Davenport, having paid money into the county in furtherance of fraud, is in no position, legally or equitably, to complain. This court can not attempt to strike a balance. The county, being the owner of the certificates, was entitled to retain the redemption money derived from same. Under section 7437, R. L. 1910, any person aiding or assisting the county treasurer or his deputy in appropriating such money to the use of the officer or to his own use is guilty of embezzlement to the extent of the value of the property or money embezzled. There is no merit in the contention of counsel that the defendant, if prosecuted at all, should have been prosecuted for obtaining property under false pretenses. The statute under which the defendant is prosecuted, in addition to punishment in the penitentiary, provides for a fine of double the value of the property embezzled, and the jury assessed the fine at $5,021.10, being double the proceeds of the check received by defendant on August 16, 1913.

Counsel do not assign any error as to the amount of the fine imposed, but suggest in their brief that the evidence does not warrant the amount. Because there was no assignment of error in such respect, it would not be necessary for us to consider the fine imposed in this case. Be that as it may, in view of what we have just said, the defendant, not having acquired title to the tax certificates, the title remaining in

the county, was guilty, if guilty at all, of embezzling the entire amount of money represented by such certificates; it being immaterial what money he paid into the county, either before or after realizing on the certificates. The money, if any, paid in, was paid in furtherance of a fraudulent transaction and gave the defendant no equity or claim in any property of the county.

We hold that the verdict of the jury is sustained by the evidence on the question of guilt, and that the testimony of the witness Kiker was sufficiently corroborated.

The next error urged by the defendant is that the court erred in permitting the witness Vernon Kiker to testify in this case, his name not being indorsed on the information at the time the trial begun.

The case-made shows that Kiker was sworn as a witness and had testified at length before any objection to his testimony was made by defendant. After so testifying, the attorney for defendant stated to the court that his attention had just been called to the fact that the name of the witness was not indorsed on the information, and an objection was made to his testifying at that time. The prosecution asked permission to indorse his name on the information. The attorney for defendant then used the following language: "We state we are surprised at the state calling this witness." The court ordered the name to be indorsed, and an exception was taken by defendant. This is all the record upon this question.

The law requiring the names of witnesses for the state to be indorsed upon the information in a salutary one, and for the benefit of defendant, but it was not intended as a mere technical requirement licensing those accused of crime, by invoking the rule, to impede the trial when there is no showing of prejudice. The failure by the state to comply with the rule is not prejudicial per se. The defendant must show that his

substantial rights are thereby affected. When the witness was called, defendant should then have made his objection. It is evident from the record that defendant knew all along that Kiker would be used as a witness. The record shows that he was used as a witness in the examining trial, and defendant well knew he would be called by the state; yet he was permitted to testify at considerable length before objection was made. While it was stated by the attorney for defendant that he was surprised, there was no showing of surprise, no motion made for a postponement or a continuance of the case, because of such surprise, and no showing of prejudice to defendant. These matters have been before this court on numerous occasions, and the law is well settled.

In Star v. State, 9 Okla. Cr. 210, 131 Pac. 542, it is held:

"If, after announcing ready for trial, the court permits the names of additional witnesses to be indorsed upon an indictment or information, and if the defendant is surprised thereat, and if the indorsement of the names of the additional witnesses requires the production of further testimony upon the part of the defendant, the defendant should withdraw his announcement of ready for trial and file a motion for a continuance, in which he should set up the facts constituting such surprise and what evidence, if any, he could produce if the case were continued, to rebut the testimony of such additional witnesses for the state."

The following decisions of this court also support this view: Colbert v. State, 4 Okla. Cr. 500, 113 Pac. 558; Clark v. State, 5 Okla. Cr. 189, 113 Pac. 992.

In Colbert v. State, the court says:

"An objection to the testimony of a witness because his name is not indorsed on the indictment comes too late if the witness has been sworn and examined at length."

But defendant says that, according to the copy of the information in the case-made, the name of the witness Kiker was

never actually indorsed upon the information. We cannot see how defendant could be prejudiced by the failure of the clerk to indorse the name of the witness after he and his attorney had been informed in open court of the order of the court to the effect that the name should be indorsed. We think that, to all intents and purposes, the name was indorsed upon the information by the order made by the court, and that the manual act of indorsing the name would not have given any further force to the order made.

The defendant calls attention to the fact that none of the witnesses appear to have been indorsed on the information as the same is set forth in the case-made. We are not in a position to say whether or not this was an oversight on the part of the stenographer who prepared the case-made; but, as counsel say in their brief, the record imports absolute verity. This fact, however, is unfortunate for the contention of defendant, for it is held in Herrell v. State, 10 Okla. Cr. 131, 134 Pac. 1139, as follows:

"Where there are no indorsements on an information or indictment of names of the witnesses for the prosecution, and the defendant goes to trial without taking any action to secure the indorsements of such names as directed by statute, he cannot be heard to complain that the names were not so indorsed. And an objection to the testimony of a witness upon the ground that it was not indorsed should be overruled."

The trial court very properly permitted the state to use the witness Kiker.

The remaining errors assigned relate to the court giving instruction numbered 3, and the refusal of the court to give defendant's requested instruction numbered 4. Defendant's brief gives no more than passing attention to the objection made to instruction numbered 3, nor do we think the point raised is important. It is sufficient to say that the court in said instruction briefly and fairly set out the elements of the offense charged, and we find no prejudicial error therein.

In defendant's instruction numbered 4 the defendant seeks to have the court submit to the jury the question of the claim of title in good faith to the check for $2,510.55, on the part of the defendant.

Aside from the claim of a judgment bar and the statute of limitations, the entire defense offered in this case is based upon the proposition made by counsel for defendant in his opening statement to the jury that the defendant deposited in good faith on November 7, 1912, his checks for $30,000 for tax sale certificates which he claimed to have purchased at that time. The assignments of all tax sale certificates thereafter to the defendant were dated November 7, 1912. The good faith, if any, relates necessarily to the alleged original purchase of the certificates involved in the information. We think that paragraph 6 of the court's charge to the jury fairly submitted this issue. The court therein instructs the jury that, if the defendant in good faith made a contract with the county treasurer for the purchase of the tax sale certificates and gave his check therefor in the sum of $30,000, the same being the estimated value of the certificates, the defendant would be the owner of the certificates from the time the checks were delivered to the county treasurer and would be entitled to the penalties and interest after that date and would have the right to divide them with Mace Herndon and Vernon Kiker or either of them or to give the same away as he saw fit.

While we cannot say that we approve of the language used in the latter part of the instruction, yet the error, if any, was in favor of the defendant. The court did not err in refusing to give the requested instruction.

Perhaps this is not a time to moralize; we are only called upon to pronounce the law; but we feel constrained to say that this case is one of great importance, important alike to the defendant and to the people of Seminole county and the state of Oklahoma.

The writer of this opinion is by nature inclined to extenuate and to cover the misdeeds of his fellows with the mantle of charity. On the other hand, we feel that verdicts of juries and judgments of trial courts are entitled to respect, and that a judgment of conviction should generally be allowed to stand where the defendant has had a fair trial under the law. A contrary view would be subversive of good government. Too often it is said that the rich escape, while the poor are punished; different is this case. The defendant was a man of large means and has been defended ably by lawyers whose reputation for ability, fidelity to clients, and probity of character is statewide. They have left no stone unturned; they have discharged their duty. The record is singularly free from acrimonious conduct on the part of counsel for the state. If the trial court erred, it was in favor of the defendant, not against him. Though belated, the hour for enforcement of the law has arrived. The divine lesson that your sins will find you out is illustrated. The day of reckoning is at hand, and the majesty of the law must be upheld.

In view, however, of the insistence of counsel that the punishment is excessive and the fact that others connected with the same or similar acts in Seminole county have received less sentences, this court modifies the judgment of the trial court, by reducing the penitentiary sentence to four years. As to the fine imposed, the court has no discretion; the same being fixed by law at double the amount found by the jury to have been embezzled. Therefore the fine will remain as fixed by the verdict of the jury.

The judgment of the trial court, as herein modified, is affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.

None by the Court—Hon. SMITH C. MATSON, one of the judges of this court, having been disqualified to sit in this case,

and this fact having been duly certified to the Governor of the State of Oklahoma, he thereupon appointed Hon. ANDREW M. STEWART, of the bar of the state of Oklahoma, and possessing the necessary qualifications, to sit during the trial and determination of this case, and who, having duly qualified, was assigned by the court, after consideration of the case, to write the opinion of the court.

## On Rehearing.

PER CURIAM.  R. G. Davenport, plaintiff in error, was convicted in the district court of Seminole county of embezzlement.   From the judgment rendered on the verdict he appealed to this court, and on January 23, 1921, the judgment of the trial court was affirmed.   A petition for rehearing was duly filed, and pending the determination of said petition for rehearing the death of plaintiff in error was suggested by counsel for plaintiff in error, and a motion was duly filed to abate the proceedings by reason of the death of plaintiff in error, which motion was supported by the affidavit of J. A. Driskell and Elmer Hall, and others, wherein affiants state that plaintiff in error, R. G. Davenport, died at Tulsa, Okla., on March 12, 1921.

By numerous decisions of this court it has been uniformly held that in a criminal action, the purpose of the proceedings being to punish the defendant in person, the action must necessarily abate upon his death.   It is therefore adjudged and ordered that all proceedings in this action be abated by reason of the death of the plaintiff in error, R. G. Davenport, and the district court of Seminole county is directed to enter its appropriate order to that effect.