E. J. SELLERS et al. v. STATE.

No. A-4714. Opinion Filed Feb. 26, 1924.
Rehearing Denied June 12, 1924.
(226 Pac. 109.)

(Syllabus.)

1. Indictment and Information—Permission to Amend Information after Sustaining Demurrer Held Equivalent to Ordering New or Amended Information. Where a demurrer to an information is allowed, but no formal judgment is rendered setting the information aside and permission is given the county attorney to amend it at that time, such permission will be deemed equivalent to an order directing the county attorney to file a new information as amended, or an amended information, as the case may be.

2. Same——Where Amendment to Information Matter of Form, Second Preliminary Hearing not Required. Where an amendment to the original information is in matter of form only a second preliminary hearing will not be required as a foundation supporting the new or amended information.

3. New Trial—Requisites of Motion for New Trial for Newly Discovered Evidence. A motion for a new trial, predicated on newly discovered evidence, must show that the new evidence is not merely cumulative, or for the purpose of impeachment; or that the newly discovered evidence would probably change the verdict in another trial.

4.    **Same—Discretion in Denying New Trial for Newly Discovered Evidence Not Disturbed.** Where newly discovered evidence materially conflicts with the evidence of the defendants at the trial, and relates to a circumstance that may or may not be indicative of the innocence of the persons convicted, the trial court's discretion in denying a new trial will not be disturbed.

5.    **Robbery—Evidence as to Identity of Defendants Held Sufficient.** Evidence upon the question of the identity of the persons implicated in the robbery examined, and held sufficient.

Appeal from District Court, Comanche County; A. S. Wells, Judge.

E. J. Sellers and another were convicted of robbery, and they appeal. Affirmed.

C. R. Reeves, for plaintiffs in error.

The Attorney General and Baxter Taylor, Asst. Atty. Gen., for the State.

BESSEY, J. In this case there were originally three defendants, Sellers, Sevier, and M. E. Dollar, charged with conjoint robbery. Sellers and Sevier were by a verdict of a jury, rendered December 22, 1922, found guilty as charged, and their punishment was assessed at imprisonment in the penitentiary for a period of 14 years. Defendant Dollar took a severance, and the record in this case does not show the outcome of his trial.

The original information filed by the county attorney was attacked by demurrer because it did not state that the money taken was "good and lawful money of the United States, of the value of $120." The court sustained the demurrer on this ground, and gave the county attorney permission to amend the information by inserting the words quoted. We think the original information was good. Under our modern practice of stating a cause of action in ordinary language, words and figures denoting dollars and cents

will be construed to mean good United States money, without a specific declaration to that effect. It could not be taken to mean counterfeit dollars or German marks, or any other kind of money. The error in sustaining this demurrer, however, was an error in favor of defendant, invited by him, of which he cannot now complain.

Moreover, permission given at the time the demurrer was sustained to amend by interlineation was equivalent to ordering a new information. We come to this conclusion by construing together sections 2512 and 2612, Comp. Stats. 1921.

Section 2512, Comp. Stats. 1921, is as follows:

"An information may be amended in matter of substance or form at any time before the defendant pleads, without leave, and may be amended after plea on order of the court where the same can be done without material prejudice to the right of the defendant; no amendment shall cause any delay of the trial, unless for good cause shown by affidavit."

Section 2612, idem, is as follows:

"If the demurrer is sustained, the judgment is final upon the indictment or information demurred to, and is a bar to another prosecution for the same offense, unless the court, being of opinion that the objection on which the demurrer is sustained may be avoided in a new indictment or information, direct the case to be resubmitted to the same or another grand jury, or that a new information be filed."

A trial court has plenary power over its orders and judgments during the term. An order sustaining a demurrer and a final judgment predicated on that order in a criminal case may be two separate judicial acts. Of course, a judicial finding, specific and final, setting aside an information makes it a nullity, not susceptible of amendment; but where no formal judgment is rendered setting it aside, and on the oth-

er hand permission is given the county attorney to amend it, such permission will be deemed equivalent to an order directing the county attorney to file a new information as amended, or an amended information, as the case may be, Davenport v. State, 20 Okla. Cr. 253, 202 Pac. 18; State v. Bilbao (Idaho) 213 Pac. 1026.

Where, as here, the amendment is immaterial, a second preliminary hearing will not be required as a foundation supporting the new information. If the preliminary hearing had was sufficient foundation for the first information, it was equally adequate for the second, both being in effect the same. The purpose of a preliminary hearing is to ascertain whether a crime has been committed, and, if so, the nature of the accusation to be made, and if there is probable cause to believe the accused committed the crime, and such probable cause is shown to give the accused advance notice of its character, to enable him to prepare for trial before a jury. Where the preliminary hearing already had meets these requirements as to a second information, or an amended information, the state will not be required to do a useless thing in holding a second preliminary trial duplicating the first. Filler v. State, 23 Okla. Cr. 282, 214 Pac. 568; White v. State, 23 Okla. Cr. 198, 214 Pac. 202; Tipton v. State, 23 Okla. Cr. 86, 212 Pac. 612.

In order to make clear the questions involved in this appeal we find it necessary to make a condensed statement of all the material testimony introduced.

The testimony of David Bressman, the prosecuting witness, shows that he and his wife were conducting a small store in connection with a gasoline filling station 1½ miles north of Lawton. On the morning of August 4, 1922, two men came walking along the highway, entered the store and purchased a lunch; one of these men was tall and slim, the other shorter

and heavier. They asked Mrs. Bressman for water and towels and, after washing, ate their lunch from the counter. While they were eating the agent for a candy company came in to collect, and Bressman told him that the candy he had purchased was not satisfactory .and handed a piece of it to the taller of the two men, who broke it into pieces. Bressman then went to the rear of the store and got his purse containing five $20 bills and some other money and paid the candy man in the presence of these two men, and in their presence put the purse in the money drawer under the counter. Bressman then went out of the store, followed by these two men, who rode away towards town with the driver of a soft drink truck.

That same evening, at about 8 o'clock, these two men again came walking along the highway and went into the store where Mrs. Bressman was, where they began inquiring the price of various edibles, and finally purchased and ate some refreshments. Thirty minutes later Dollar drove up in a Dodge touring car and said he wanted to get some water for his car. At this time the slim man was standing outside the store, picking his teeth, and Bressman was also outside, sitting on a box. Dollar asked Bressman if he kept a certain kind of chewing tobacco, and, when he said he did, Dollar told him to hurry in and get him some. As Bressman went into the store the slim man followed him in, and when he got inside the shorter man held a pistol on Bressman and told him to get that black purse he had that morning. The slim man was standing close to Mrs. Bressman at this time. On account of the threats and intimidation the purse was delivered to the shorter man, and both retreated to where Dollar was with the Dodge car. There they ordered Dollar to "stick them up" and to get into the car and drive away; both of them got in with him and the car moved rapidly away and out of sight down the highway.

From the actions of all three men, the Bressmans suspected that Dollar was a confederate, and that the threats against Dollar were a pretense only. Immediately after the robbery Bressman notified the sheriff, Mr. Frampton. Later, in Lawton, in the presence of the sheriff, Bressman identified both Sellers and Sevier as the men who had robbed him. In the room occupied by one of the defendants the sheriff found a small pistol fitting the description of the one used in the robbery.

Carrie Bressman, the wife, also identified the defendants Sellers and Sevier as the men who had been at the store in the morning and who returned that night and robbed them. On both occasions the two men were in the store for a period of about 30 minutes, and she had good opportunity to observe their appearance and actions.

The sheriff testified that the identification made by Mr. and Mrs. Bressman was positive. After placing these two defendants in jail, the sheriff and Bressman returned to the filling station, where Dollar later appeared and was placed under arrest.

The defense of Sellers and Sevier was an alibi, that it was a case of mistaken identity, and that the robbery was in fact committed by Dollar and two men named McSweeden and John Balch. Sevier took the stand in his own behalf and in defense of his codefendant Sellers; Sellers did not testify.

Mr. Osmund, a piano dealer, M. S. Hamilton, proprietor of the Southern Hotel, Mr. Swain, a guest at the Willard Rooms, and Lillian Barker, a waitress at a cafe, all testified that they saw these two defendants in Lawton at various times between 5 and 7:30 p. m. on August 4th. John Kershaw, a soldier, D. Docas, a soldier, Roger Jackson, a farmer, Mr.

Wallace, a farmer, Bill Abrams, no occupation, Sam Kirk, taxi driver, Grover Burk, barber, Dewey Adkins, soldier, Dr. C. P. Hess, Mr. De Lehanty, transient, M. P. Harrington, baseball umpire, all testified that they saw the defendants or one of them in Lawton at various times from 8 to 9:30 o'clock p. m. August 4th.

Grover Burk, a barber, said that at first Bressman identified him as being one of the robbers, and that he also identified Cliff Cox as the other, but later retracted as to Cox. Cox testified that Bressman said Sevier was not the man implicated with Sellers and then accused Cox, but later retracted. Cox was also an ex-convict.

Joseph Cox testified that he saw a man driving a Dodge car on the night of August 4th, at a terrific rate of speed, in the direction taken by Dollar's car after the robbery; that there was a man on each running board, but that neither of these men was Sevier or Sellers. Mr. Robberson testified that he came to Bressman's store immediately after the robbery, and that Bressman told him that he did not know who it was that did the robbing.

Sevier testified that he and Sellers were in Lawton all of the late afternoon and evening of August 4th; that Bressman identified several others besides him as being implicated in the robbery; said that Bressman came with the sheriff to Seller's place and "identified everybody near"; that he said it was Shorty Burk—then said that Cox looked like one of them; that he never identified Sevier positively until the preliminary trial; that Mrs. Bressman did not identify him; that when she looked at Sevier she looked at her husband and shook her head, indicating that she did not think he was one of the robbers.

M. E. Dollar testified: That on the evening of August 4th he left the military post in a Dodge car, about 30 minutes before sundown, to go to Lawton. That when he arrived at the rock quarry he picked up Johnnie Balch and McSweeden. That when about 200 yards from Bressman's store he stopped to fix one of his tires which had blown out. Balch said, "If I had some money we would go up to the store and get something to eat." Dollar gave him 70 cents, and Balch and McSweeden walked on to the store, while Dollar spent about 30 minutes mending his tire. That he then drove on up to the Bressman store. That Bressman was sitting outside the store, and Balch and McSweeden were in the store with Mrs. Bressman. That he was in a hurry and asked Bressman if he would go in the store and get him some tobacco while he put some water in his radiator. When Bressman went in Balch and McSweeden robbed Bressman and his wife, and as they retreated from the store Balch drew his pistol on Dollar and made him hold up his hands, then ordered him to get into the car and drive them away. Dollar started the car and Balch and McSweeden got on the running boards, one on each side, and together they rapidly drove away. Dollar testified: That as they drove the two men also robbed him, taking $110 from him. That after they drove several miles they stopped, and Balch and McSweeden walked off through the fields. Dollar then returned to Bressman's filling station, where he was arrested by the sheriff on the suggestion of Bressman as being implicated in the robbery. When arrested, Dollar made no explanation relative to the identity of his companions. After it was apparent that Dollar was implicated and that he could not escape responsibility he contended his confederates were Balch and McSweeden, and not Sellers and Sevier.

As throwing light upon this testimony, the state in rebuttal sought to show by the father of Balch that Balch on

August 4th was in jail in Amarillo, Tex. In a motion for a new trial, on the ground of newly discovered evidence, a showing was made that Balch was not in jail at Amarillo on that date, supported by the affidavits of the district attorney, the jailer, and others there.

This motion for a new trial was also supported by an affidavit of Dollar in which he repudiated that portion of his testimony relating to his having been robbed by Balch and McSweeden, and stated in substance that he, McSweeden, and Balch were and had been partners in crime; that the Dodge car in which they fled from the scene of the robbery belonged to them jointly; that the car was purchased from the Turben-Lewis Motor Company, the purchase price being represented by their joint notes secured by a mortgage. This part of the affidavit was corroborated by an affidavit of Mr. Turben and the chattel mortgage records, and a showing that after the seizure of this car by the sheriff it was returned to this motor company under the terms of the mortgage. Dollar's affidavit shows that some of these facts were probably communicated to Sellers in writing by Dollar while both were in jail, a short time before the trial. We assume that Sellers received these written communications some time before the trial, although that fact is not affirmatively shown.

In rebuttal, Mr. and Mrs. Bressman testified that they were certain it was Sellers and Sevier who robbed them and not Balch and McSweeden, as stated by Dollar.

The motion for a new trial was overruled. Counsel for Sellers and Sevier urges that on the showing made this was manifest error.

It frequently happens that where one of several partners in crime is apprehended in such a way as to make his escape impossible he will make a confession absolving his

confederates from all blame. Often such confessions are entitled to little or no credence. In this case a self-confessed robber, having testified at the trial that he had nothing to do with the robbery of the Bressmans and that he himself was robbed by the thieves, made an affidavit that he, Balch, and McSweeden were partners in this and other crimes, and that he received some of the money taken from the Bressmans. Alleged newly discovered evidence coming from such a source and under such circumstances is entitled to little credence.

It is argued that Dollar's last statement was verified by the people who sold him the automobile. So far as the ownership of the car is concerned, that is true, but even so Dollar may have been aiding Sellers and Sevier in perpetrating this robbery. It does not necessarily follow that because he was criminally implicated with Balch and McSweeden in other crimes, and because they owned the automobile jointly, that he had no criminal connection with Sellers and Sevier.

A motion for a new trial, predicated on newly discovered evidence, must show that the new evidence is not merely cumulative, or for the purpose of impeachment; or that the newly discovered evidence would probably change the verdict in another trial. The new evidence sought to be shown here was for the purpose of impeaching the father of Balch, who had testified that his son was in the Amarillo jail on August 4th, and to show that Dollar, Balch, and McSweeden were joint owners of this Dodge car and might be partners in other crimes.

A defendant cannot as a matter of right claim a new trial on the ground of newly discovered evidence. The granting of such new trial rests in the sound discretion of the trial court, and where, as in this case, such evidence is in direct conflict with the evidence given for the defendant on the

trial and is sought for purposes of impeachment, and has no direct tendency to show the identity of the robbers, we cannot say that the trial court abused his discretion in refusing a new trial. Noel v. State, 14 Okla. Cr. 548, 174 Pac. 293; Douthitt v. Territory, 7 Okla. 55, 54 Pac. 312.

If Balch or McSweeden was indeed in or about Lawton on the 4th of August, the defendants in all probability by due diligence could have so shown by eyewitnesses who saw them or either of them. No such diligence was shown. Defendants asked for a new trial in order to get evidence from Amarillo, Tex., to prove a negative fact; that is, that Balch was not there in jail on August 4th—a showing that as a fact in evidence or for impeachment purposes would not directly affect the issues. Where newly discovered evidence is remote or speculative, the court will be justified in denying a new trial.

Possibly the Bressmans were mistaken in identifying these two defendants, Sellers and Sevier, but that is scarcely probable. They both had ample opportunity to calmly observe the men who committed the robbery, on two different occasions, in the daytime, each time during an interval of about 30 minutes. Under such circumstances this court would not be justified in holding that the evidence was insufficient.

It would serve no good purpose to prolong this opinion by separately treating all the defendants' assignments of error. We have examined the instructions to the jury, the instructions refused, the alleged competent evidence excluded, the alleged incompetent evidence admitted, and the alleged misconduct of the trial court, and find no prejudicial error in any of these matters.

The judgment of the trial court is affirmed.

MATSON, P. J., and DOYLE, J., concur.