# Ex parte C. W. COVELL.

No. A-9422.   Dec. 17, 1937.
(74 P. 2d 626.)

260

262

Hatcher & Bond, for petitioner.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Bob Shelton, Co. Atty., for respondent.

DOYLE, J. (after stating the case as above). This is an application for a writ of habeas corpus on the part of C. W. Covell. The petitioner is in the custody of the sheriff of Grady county, under commitment by a magistrate to answer for the crime of bribing a county officer.

To the petition there are attached as exhibits the complaint and a transcript of the testimony taken before the committing magistrate. Also order of the court sustaining demurrer to information previously filed in the district court, and order giving leave to file an amended information.

It was evidently the purpose of the complaint to charge a violation of section 1906 of the Penal Code 1931, 21 Okla. St. Ann. § 381, which makes it a felony for any

person to corruptly give, offer, or promise to any public officer "any gift or gratuity whatever, with intent to influence his act, vote, opinion, decision or judgment on any matter, question, cause or proceeding which then may be pending, or may by law come or be brought before him in his official capacity, or as a consideration for any speech, work or service in connection therewith."

From the record it appears that:

George E. Hurst was the duly elected, qualified, and acting county clerk of Grady county from January 7, 1933, to January 4, 1937.

He testified that in April or May, 1936, he talked to petitioner in the office of the county clerk about the purchase of a counter for the county clerk's office, and talked with him three or four times later, when making up the budget for the year, and was trying to estimate what the counter would cost so as to include it in the county budget for the office of county clerk. They estimated the cost about $1,200, and he told petitioner he wanted to give him the order and told him he wanted $200, plus a bill he owed him, something over $100. In the month of July he gave him the order; that the claim was filed, signed, "Standard Printing & Office Supply, by C. W. Covell," and, while witness was still in office, the warrant issued, although the agreement was not to pay him for the counter until the same was delivered and set up; that the claim went before the Board of County Commissioners and was approved; that he left the warrant in the office with Mr. Nix, his successor.

He further testified: "At the time I gave him the order I didn't receive any compensation for giving the order at that time, after that he paid me some money four different times on it, giving in all $42, and he told

me he would charge off what I owed on my open account at that time"; that at the time he gave the order and made this deal with Mr. Covell he was acting in his official capacity as county clerk of Grady county.

Mrs. F. C. Melton testified that she was bookkeeper for defendant, Covell, about two years. In February, 1937, he gave her this county warrant, signed: "George E. Hurst, county clerk, payable to Standard Printing Company. Prin. $1038.60 ints. $15.80, total $1039.40," punched "paid 3-24-37 A. L. Melton Co. Tres." to take to the Citizens-Farmers National Bank and have it cashed; that the cashier gave her a slip statement with the money showing $500, $200, $250, and $73.60, each in a separate package; that she returned with the money and gave it to Mr. Covell; that George E. Hurst carried an account with the Standard Printing & Office Supply Company, and shortly before she quit Mr. Covell directed her to charge it off, which she did.

Ted Warkington testified that he was engaged in the printing and stationery business, at Lawton, now known as the Southwestern Stationery & Bank Supply Company; that C. W. Covell told him that he had a prospect for a counter and he came to Chickasha and with Mr. Covell talked with County Clerk Hurst, who showed them the type of counter wanted, and how many units, and he had a blueprint made and sent to Mr. Covell; "later he ordered the counter from us as the agent of the Art Metal Construction Company"; that he received from Mr. Covell $670 and paid the same to the Art Metal Supply, less 2 per-cent. cash discount, and produced the check by which payment was made; that of the selling price $1,023.60, the local seller is supposed to get 36 per cent. of the same.

There was no testimony offered on the part of the defendant.

Counsel for petitioner argue that the evidence was not sufficient to show the commission of any offense, "since this appropriation out of which the counter was purchased was made in the budget for the general government fund for furniture and equipment, therefore the county clerk had no legal authority whatsoever in connection with said purchase. It was a matter that came solely before the county commissioners in their official capacity, section 1906, 21 Okla. St. Ann. § 381, and they could not delegate their authority.

"That the county clerk did not even have statutory authority to recommend the purchase, and since he did not have such authority, then petitioner, C. W. Covell, could not make him a gift or gratuity with the intent to influence any act, opinion, decision or judgment on the matter of purchasing this counter"—citing Allen v. State, 63 Okla. Cr. 16, 72 P. 2d 516, wherein this court held: "The term 'bribe' signifies any money, goods, right in action, property, thing of value, or advantage, present or prospective, or any promise or undertaking, asked, given, or accepted, with a corrupt intent to influence unlawfully the person to whom it is given, in his action, vote, or opinion, in any public or official capacity. Penal Code, St. 1931, § 1777, 21 Okla. St. Ann. § 97."

In our opinion the argument made is not well founded.

In the case of Ex parte Winters, 10 Okla. Cr. 592, 140 Pac. 164, 51 L.R.A., N.S., 1087, this court held:

"A person who holds himself out as an officer under color of authority, and who solicits and accepts a bribe, has no right to defend and be discharged on the ground that, as a matter of law, he had no right to act as such officer."

In the opinion it is said:

"Does a person who holds himself out as an officer under color of authority, and who solicits and accepts a bribe, and endeavors to and does corrupt other persons, have a right to defend and be discharged upon the contention that, as a matter of law, he had no right to act as such officer, therefore the accepting of a bribe was not a violation of the statute? * * *

"As said by this court in Ellington v. State, 7 Okla. Cr. 252, 123 P. 186, which was an embezzlement case wherein a guardian was prosecuted for embezzling moneys of his ward, and who attempted to defend on the ground that the money embezzled by him did not legally belong to his ward, therefore it was no crime for him to embezzle it, that, 'if he was agent enough to collect this money, he was agent enough to be punished for its embezzlement.' The same might be said of the petitioner; if he was officer enough to solicit and accept a bribe, he was also officer enough to be sent to the penitentiary for so doing. Corruption and debauchery are not tolerated in civilized communities. * * * In this position we are not wholly without support by the authorities.

"In State v. Duncan, 153 Ind. [318] 320, 54 N. E. [1066] 1067, the Supreme Court of Indiana, in considering a similar question, said:

" 'Bribery is an offense against public justice. The essence of it is the prostitution of a public trust, the betrayal of public interests, the debauchment of the public conscience. If one admits the doing of the things that produce these results, shall he escape by saying he had no right to act at all? It would seem passing strange if the consequences of one breach of law might be evaded by showing another.' * * *

"The Supreme Court of Ohio, in State v. Gardner, 54 Ohio St. 24, 42 N. E. 999, 31 L.R.A. 660, promulgated a similar doctrine. In the Ohio case Gardner was prosecuted for offering a bribe to one purported to hold an office. His defense was that such office did not legally exist. The court held that he could not maintain any such defense.

"In Price v. State, 10 Okla. Cr. 427, 137 Pac. 736, we had under consideration a question involving the principle now under discussion. In that case Price was prosecuted for embezzling money as an attorney. He had moved from another state to Oklahoma, but had not been legally admitted to the bar in Oklahoma. His defense was based on the contention that, not having been legally admitted to the bar, he could not be charged with embezzlement as a lawyer. In determining that question, we said:

" 'When a lawyer from another state moves into Oklahoma, and, without securing admission to the bar of this state, holds himself out to the public as a lawyer, accepts business as such, and embezzles money collected by him as a lawyer, he cannot escape punishment upon the ground that he was never legally admitted to the bar of Oklahoma.' See, also, Florez v. State, 11 Tex. App. 102."

The offense is all the more serious if the officer had no authority to act, because of the inducement to step beyond the line of his duty and to usurp authority not committed to him. State v. Ellis, 33 N.J.L. 102, 97 Am. Dec. 707.

The following text of 8 American Jurisprudence, page 895, § 15, is supported by numerous cases:

"The general rule seems to be that offering, giving, soliciting, or accepting a bribe constitutes bribery where the one solicited, soliciting, or accepting the bribe, though not an officer de jure, was acting under color of title to the office involved. In other words an officer de facto is punishable for accepting or soliciting a bribe in the same manner as if he were an officer de jure. Likewise it is a crime to offer or to give him a bribe."

Any other rule would be a reproach to the law, for it would encourage official corruption and tend to subvert the honest administration of public affairs.

It follows from what has been said that the committing magistrate did not err in overruling the demurrer to the complaint and the demurrer to the evidence.

It is also contended that the order sustaining a demurrer to a previous information is a bar to further prosecution, in that the court failed to direct that a new information be filed, charging the same offense as provided by section 2952, St. 1931, 22 Okla. St. Ann. § 508.

The statute specifically provides that the judgment sustaining a demurrer to an information is not final where the court "direct the case to be resubmitted to the same or another grand jury, or that a new information be filed."

The order "That the state of Oklahoma is given leave to file an amended information" was sufficient to fulfill the requirement of the statute. No formal language constituting a specific direction to file a new information is required. Davenport v. State, 20 Okla. Cr. 253, 202 Pac. 18; Johnson v. Territory, 5 Okla. 695, 50 Pac. 90.

In Sellers v. State, 27 Okla. Cr. 245, 226 Pac. 109, this court held:

"Where a demurrer to an information is allowed, but no formal judgment is rendered setting the information aside and permission is given the county attorney to amend it at that time, such permission will be deemed equivalent to an order directing the county attorney to file a new information as amended, or an amended information, as the case may be."

For the reasons stated, the application for the discharge of the petitioner will be denied. It is so ordered.

DAVENPORT, P. J., and BAREFOOT, J., concur.